741 So.2d 599 (1999)
STATE of Florida, DEPARTMENT OF INSURANCE, Appellant,
v.
KEYS TITLE AND ABSTRACT CO., INC., a Florida corporation, Appellee.
No. 98-2368.
District Court of Appeal of Florida, First District.
September 9, 1999.
Rehearing Denied October 7, 1999.
*600 Michael H. Davidson, Fla. Dept. of Insurance, Tallahassee, for Appellant.
Alfred L. Frith of Bogin, Munns & Munns, Orlando, for Appellee.
Mark A. Brown, Robert Pass and Adam S. Tannenbaum of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for Amicus Curiae Attorney's Title Insurance Fund, Inc.
PADOVANO, J.
This is an appeal from a final judgment declaring a state statute unconstitutional on its face. The trial court held that section 627.782(8), Florida Statutes violates the right to equal protection of the law because it imposes a burden on non-lawyer title insurance agents that is not also imposed on lawyers who sell title insurance. We conclude the legislature had a rational basis to limit the application of section 627.782(8) to non-lawyer title insurance agents. Therefore, we reverse the trial court's decision and uphold the validity of the statute.
Title insurance can be sold in Florida either by a title insurance agent who is licensed by the Department of Insurance or by a lawyer who is a member in good *601 standing of the Florida Bar. In either case, the title insurance premium rates are regulated by the Department of Insurance under Chapter 627, Florida Statutes. Section 627.782(8) authorizes the Department to promulgate a rule requiring its licensees to provide relevant information for use in setting title insurance rates. The statute provides that:
[t]he department may, by rule, require licensees under this part to annually submit statistical information, including loss and expense data, as the department determines to be necessary to analyze risk premium and related title services rates, retention rates, and the condition of the title insurance industry.
Based on this authority, the Department adopted rule 4-186.013, Florida Administrative Code, which requires all licensees under Chapter 626 to provide statistical data for use in setting rates.
On its face, section 627.782(8) makes no distinction between lawyers and non-lawyers. It applies to all title insurance agents who are licensees of the Department of Insurance. However, section 626.8417(4)(a), Florida Statutes provides that lawyers who are members in good standing of the Florida Bar are exempt from the licensure requirements of Chapter 626. Because lawyers are not "licensees" of the Department of Insurance, they are not subject to the Department's reporting requirements authorized by section 627.782(8) and required by rule 4-186.013.
Keys Title and Abstract Co., Inc., initiated an action for declaratory relief against the Department of Insurance on July 31, 1996, to challenge the constitutionality of section 627.782(8). One of the arguments Keys advanced in the trial court was that the statute violates the constitutional guarantee of equal protection of the law.[1] On this point, Keys maintained that the statute makes an arbitrary distinction between non-lawyer title insurance agents and lawyers who sell title insurance. The trial court agreed and rendered a final judgment on June 4, 1998, declaring the statute unconstitutional as a violation of the right to equal protection of the law. The Department filed a timely appeal to review the judgment.
We begin with the applicable standard of review. A trial court decision on the constitutionality of a statute is reviewed by the de novo standard, because it presents a pure issue of law. The appellate court is not required to defer to the judgment of the trial court. Although trial court decisions are presumed to be correct, there is also a presumption in the law that a statute is constitutionally valid. In re Estate of Caldwell, 247 So.2d 1 (Fla.1971); Libertarian Party of Florida v. Smith, 660 So.2d 807 (Fla. 1st DCA 1995). Florida appellate courts have resolved these conflicting presumptions by deferring to the legislature. When a trial court has declared a statute unconstitutional, the reviewing court must begin the process of appellate review with a presumption that the statute is valid. See Ocala Breeders' Sales Company, Inc. v. Florida Gaming Centers Inc., 731 So.2d 21, 24 Fla. L. Weekly D627 (Fla. 1st DCA 1999); State v. Slaughter, 574 So.2d 218 (Fla. 1st DCA 1991).
The state must afford all persons equal protection of the law, but this requirement does not deprive the legislature of all power of classification. See Personnel Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979); Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). The issue is not whether the statute distinguishes one class of persons from another. Here, as in many other cases, the statute plainly does make such a distinction. The question the *602 court must answer is whether the distinction is one that is proper, given the purpose of the statute.
An equal protection challenge to a statute that does not involve a fundamental right or suspect classification is evaluated by the rational relationship test. See Hodel v. Indiana, 452 U.S. 314, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981); Idaho Dept. of Employment v. Smith, 434 U.S. 100, 98 S.Ct. 327, 54 L.Ed.2d 324 (1977); State v. Bales, 343 So.2d 9 (Fla.1977). According to this test, the court must uphold the statute if the classification bears a rational relationship to a legitimate governmental objective. See Pennell v. City of San Jose, 485 U.S. 1, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988). Our analysis in this case is governed by the rational relationship test, because section 627.782(8) does not impair a fundamental right or affect a suspect class of persons.
A proper application of the rational relationship requires consideration of two related but distinct issues. The court must determine (1) whether the statute serves a legitimate governmental purpose and (2) whether it was reasonable for the legislators to believe that the challenged classification would promote that purpose. See Western and Southern Life Ins. Co. v. State Bd. of Equalization of California, 451 U.S. 648, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981); Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981). In the present case, there can be no doubt that the statute serves a legitimate purpose. It enables the Department of Insurance to make informed decisions regarding the premium rates for title insurance. The more difficult question we must address here is whether the legislators had reason to believe that the classification imposed by the operation of the statute would promote the legislative objective.
The rational relationship test does not focus on the wisdom of a particular legislative classification. Instead, the court must examine the potential reasons for treating one class of persons differently from another. As the Florida Supreme Court explained, a statute meets the rational relationship test if "any state of facts can reasonably be conceived that will sustain the classification attempted by the Legislature." See North Ridge General Hospital v. City of Oakland Park, 374 So.2d 461, 464 (Fla.1979), citing Lewis v. Mathis, 345 So.2d 1066, 1068 (Fla.1977); see also Gallagher v. Motors Insurance Corporation, 605 So.2d 62, 69 (Fla.1992)(holding that an equal protection challenge must be rejected if there is a "plausible reason" for the classification). It would be proper to sustain an equal protection challenge to a statute only if "the Legislature could not have had any reasonable ground for believing that there were public considerations justifying the particular classification and distinction made." North Ridge General Hospital, 374 So.2d at 465. This definition of the test imposes a heavy burden on the party challenging a statute on equal protection grounds.
Keys Title and Abstract argues that the Legislature had no reason to exclude lawyers from the reporting requirements of section 627.782(8), because the statute does not address a matter pertaining to the regulation of attorneys. We agree that the statute relates only to the setting of title insurance rates, an issue of equal importance to all title insurance agents, whether they are regulated by the Department of Insurance or the Florida Bar. Likewise, we acknowledge that there are similarities between non-lawyer title insurance agents and lawyers who sell title insurance. All title insurance agents must charge the same premium rates and they all perform the same general function. Moreover, the protection afforded by a title insurance policy is the same whether the policy was issued by a non-lawyer title insurance agent licensed by the Department or by a member of the Florida Bar.
*603 Despite these similarities, however, we conclude that the legislature had valid reasons to exclude lawyers from the reporting requirement. One such reason is that the inclusion of lawyers would make the reporting requirement much more difficult to enforce. If all members of the Florida Bar were included in the class of persons required to report statistical data, the Department of Insurance would be forced to devise a method of identifying those Bar members who are selling title insurance. This would be very difficult, as only a fraction of the total number of Florida lawyers are engaged in title insurance work. Even if the Department could identify the lawyers who are selling title insurance policies, it could not impose any disciplinary measure against those within that subclass who fail to comply with the reporting requirements. The authority to regulate attorneys is reserved for the Florida Supreme Court under Article V, section 15 of the Florida Constitution. In contrast, the class of non-lawyer title insurance agents consists entirely of persons who are selling title insurance, and all of them are subject to discipline by the Department of Insurance.
Another reason for excluding lawyers from the reporting requirement is that the information they could provide would not be as accurate as the information submitted by non-lawyer title insurance agents. Some lawyers may be engaged exclusively in the practice of writing title insurance policies, but it is fair to assume that many others are selling title insurance polices as a part of a broader practice that includes other kinds of legal work. The expenses incurred by lawyers who are selling title insurance as a part of a general practice or even as part of a real estate practice would not accurately predict the necessary rate for title insurance premiums. This problem of apportioning expenses does not exist, however, with respect to non-lawyer title insurance agents. They are all engaged exclusively in the business of writing title insurance policies. Consequently, the expense data they could provide to the Department of Insurance would be a more accurate indicator of the appropriate premium rates.
In our view, section 627.782(8) is rationally related to a valid governmental purpose, and the classification in the law is reasonably designed to achieve that purpose. For these reasons, we conclude that the statute does not violate the right to equal protection of the law. We reverse the decision of the trial court and uphold the validity of the statute.
Reversed.
DAVIS, J., concurs. BENTON, J., dissents with opinion.
BENTON, J., dissenting.
Keys Title and Abstract Co., Inc. (Keys Title), "a non-lawyer title agent," proved that section 627.782(3), Florida Statutes (1997), as implemented by Florida Administrative Code Rule 4-186.013, places burdens on title insurance agents who are not lawyers that it does not place on title insurance agents who are lawyers, simply because they are lawyers. This differential treatment lacks "a just and reasonable relation to the statute in respect to which the classification is proposed." Florida Real Estate Comm'n v. McGregor, 336 So.2d 1156, 1159 (Fla.1976).
The declaratory final judgment under review, which I would affirm, concluded that the statute as implemented by the rule does not afford equal protection of the laws to title insurance agents who are not lawyers:
[T]itle agents ... must obey and charge the promulgated title insurance rates mandated by Chapter 627, Florida Statutes.
8. It is undisputed between parties, and indeed based upon the deposition of Wally Senter, it appears that the non-attorney title agents comprise a small minority of the title agents in the State of Florida.

*604 9. Section 627.782(8), Florida Statutes, denies non-attorney title agents equal protection of the laws under the Federal and State Constitutions by requiring "licensees" only, i.e., non-attorney title agents, to submit data to the Department of Insurance which is used to analyze risk-premiums and ultimately set title insurance rates.
10. There is no rational basis for the Legislature's classification of licensees only to be subject to the statute when all title agents must charge the same title insurance premiums. The Court finds this classification to be arbitrary and denies non-attorney title agents equal protection of the laws under the State and Federal Constitutions.
Even though the court today reverses the trial court's ruling on the statute, the majority opinion does not discuss the fate of Florida Administrative Code Rule 4-186.013, which was also challenged below.[2]
Section 627.782, Florida Statutes (1997), as its title indicates ("Adoption of rates"), has to do with how the Department of Insurance determines the amount of premiums charged for title insurance. The whole purpose of the statute is to facilitate ratemaking, and the rates the Department sets apply to all title insurance agents, lawyers and non-lawyers alike.[3]
The majority opinion offers three possible bases for requiring title agents to compile and supply information only if they are not lawyers: the difficulty of identifying lawyers who sell title insurance, the difficulty of requiring lawyers to comply with the Department's requests, and the conjecture "that the information [lawyer agents] could provide would not be as accurate."
None of these afford the rational basis our constitutions require. Surely the Department can obtain the names of title insurance agents who are lawyers in the same way it obtains the names of title insurance agents who are not lawyers: By asking the title insurance companies (whom the Department regulates) for lists of the agents who represent them.
The Legislature is not without power to require insurance agents who are lawyers to comply with the Department's requests for information necessary for ratemaking. No constitutional provision insulates lawyers from legislative power of this kind.
Nothing on or off the record supports the suggestion that lawyers' information would be less accurate than information supplied by those who are not lawyers. Non-lawyer title insurance agents who offer title search and abstracting services as well as title insurance would also need to apportion expenses.
*605 To the extent the rule and the statute it implements impinge on the right to privacy guaranteed by article I, section 23 of the Florida Constitution,[4] it was incumbent upon the Department to demonstrate that "the challenged regulation serves a compelling state interest and accomplishes its goal through the use of the least intrusive means." 477 So.2d at 547. Exempting most title insurance agents from reporting requirements simply because they are lawyers an underinclusion that results in relying for information year after year on the efforts and the disclosures of non-lawyer agents onlymade such a showing impossible.
Even as to records in which title insurance agents lack a reasonable expectation of privacy,[5] equal protection guaranties require some rational basis for a statutory classification that places the whole burden of information gathering on those agents who are not lawyers. See M.L.B. v. S.L.J., 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996); Elder v. Holloway, 510 U.S. 510, 515, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994); Quinn v. Millsap, 491 U.S. 95, 109 S.Ct. 2324, 105 L.Ed.2d 74 (1989); Allegheny Pittsburgh Coal Co. v. County Comm'n of Webster County, W. Va., 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989); Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); Connor v. Southwest Florida Reg'l Med. Ctr., 668 So.2d 175 (Fla.1995); DeAyala v. Florida Farm Bureau Cas. Ins. Co., 543 So.2d 204 (Fla.1989).
Logically, limiting the Department's information-gathering to "a small minority of the title agents" impedes, rather than furthers, the statutory objective of obtaining representative information for setting rates. Any legislative purpose to spare from reporting requirements agents who do very little business is rationally accomplished by an exemption dependent on the number or amount of title insurance policies an agent writes, not on the agent's membership in the bar.
Section 627.782, Florida Statutes (1997), is "deficien[t] under the Equal Protection Clause of the Constitutions of Florida and the United States." State v. Lee, 356 So.2d 276, 279 (Fla.1978). It does not meet the "classic criterion for assessing the validity of a statutory classification," id., namely,
whether that classification rests upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. See Ohio Oil Co. v. Conway, 281 U.S. 146, 50 S.Ct. 310, 74 L.Ed. 775 (1930). Stated another way "in order for a statutory classification not to deny equal protection, it must rest on some difference that bears a just and reasonable relation to the statute in respect to which the classification is proposed." Gammon v. Cobb, 335 So.2d 261, 264 *606 (Fla.1976). Accord, Rollins v. State, 354 So.2d 61 (Fla.1978).
Id. at 279-80. The trial court's implicit conclusion that Florida Administrative Code Rule 4-186.013 cannot stand if the statutory provision purporting to authorize it falls is correct in my view. As to the judgment that today revives both the rule and section 627.782(8), Florida Statutes (1997)because I perceive no "logical connection between the classification involved and the stated purpose to be achieved by the statute," McGregor, 336 So.2d at 1159I respectfully dissent.
NOTES
[1] Keys Title and Abstract also maintained that the statute violates the state constitutional right to privacy. This point was rejected by the trial court and is raised here in a cross appeal. We find the privacy argument to be without merit.
[2] The trial court assumed that its ruling on the statute rendered the challenge to Florida Administrative Code Rule 4-186.013 moot:

11. Because Section 627.782(8), Florida Statutes, has been declared unconstitutional to the extent that it authorizes the Department to, by Rule, require licensed non-attorney title insurance agents to submit statistical information which cannot be required of unlicensed attorney agents, the Court need not address Rule 4-186.013, Florida Administrative Code since the statute upon which it is based has been declared unconstitutional.
Under the court's ruling today that the statute meets constitutional requirements, the question of the rule's validity remains.
[3] Yet title agents who are not lawyers are the only agents who face the inconvenience and expense of gathering the information the Department uses in setting rates. The majority opinion concedes that "the statute plainly does make such a distinction." Ante at 601. The issue is whether the statutory purpose justifies the differential treatment the statute authorizes.

Title insurance agents who are lawyers and those who are not may be nearly identically situated insofar as incurring expenses in selling title insurance is concerned. A law office that limits its practice to real estate work and an office in which title insurance agents who are not lawyers also research titles, prepare abstracts, and facilitate real estate conveyances have much in common. See McGregor, 336 So.2d at 1160 (finding statutory exception unreasonable where "[s]uch unreasonableness is demonstrated by hypothetical situations").
[4] The majority dismisses the non-lawyer title agents' assertion of a right to privacy in their internal accounts with unseemly haste and without discussion. Sweeping language in Florida Administrative Code Rule 4-186.013 seems to authorize the Department to demand disclosure of materials much more sensitive than the bank records at issue in Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544 (Fla.1985) (recognizing a state constitutional right to privacy in such records which gives way only to a compelling state interest). The records in Winfield were subpoenaed, moreover, only after probable cause had arisen and after the records were already in the hands of third parties.
[5] Regulatory statutes may require insurers and their agents to maintain records documenting insurance transactions. "[W]here agencies have sought to obtain required records for legitimate investigatory purposes, courts have repeatedly upheld access on request on both periodic and nonperiodic bases. See, e.g., California Bankers Ass'n v. Shultz, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974); United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950)." McLaughlin v. Kings Island, Div. of Taft Broadcasting Co., 849 F.2d 990, 995 (6th Cir. 1988). But the question here is whether non-lawyers must bear the whole burden of compiling and furnishing information the Department needs to set rates.