779 So.2d 651 (2001)
Richard R. ZAPO and Marion R. Zapo, et al., Appellants,
v.
Morgan GILREATH, Volusia County Property Appraiser, Bernard J. Kane, Volusia County Tax Collector, and L.H. Fuchs, Executive Director, Florida Department of Revenue, Appellees.
No. 5D00-1888.
District Court of Appeal of Florida, Fifth District.
March 16, 2001.
*652 Guyte P. McCord, III and Gary M. Ketchum of McCord, Bubsey, Ketchum & Donohue, L.L.P. of Tallahassee, for Appellants.
B. Jordan Stuart of Wood & Stuart, P.A., for Appellees, Morgan Gilreath and Bernard J. Kane.
Robert A. Butterworth, Attorney General, Tallahassee, and Mark T. Aliff, Assistant Attorney General, Tallahassee for Appellee, Florida Department of Revenue.
ORFINGER, R.B., J.
Appellants own mobile homes and the real property to which their mobile homes *653 are affixed in Volusia County, Florida. Pursuant to section 193.075, Florida Statutes (1996), their mobile homes are subject to ad valorem taxation as real property. The same statute exempts mobile homes affixed to leased property from ad valorem taxes.
Appellants brought suit challenging the constitutionality of section 193.075. They contend that subjecting a mobile home to ad valorem taxation when the owner of such home also owns the real property to which the mobile home is permanently affixed, while exempting mobile homes affixed to leased real property from such taxes, violates article I, section 2 and article VII, section 1(b) of the Florida Constitution. The trial court found the challenged statute to be constitutional. We agree with the trial court and affirm.

BACKGROUND
We begin our analysis by recognizing that, subject to certain exceptions, article VII, section 4 of the Florida Constitution makes the Legislature responsible for passing laws that secure a just valuation of all property for ad valorem taxation.[1] Article VII, section 1(b) of the Florida Constitution exempts certain property from ad valorem taxation by providing:
Motor vehicles, boats, airplanes, trailers, trailer coaches and mobile homes, as defined by law, shall be subject to a license tax for their operation in the amounts and for the purposes prescribed by law, but shall not be subject to ad valorem taxes.
Article VII, section 1(b) does two things. First, it creates a class of property exempt from ad valorem taxes. Second, it authorizes the Legislature to define what constitutes a mobile home, airplane, boat, etc. Importantly, all property exempt from taxation under this provision share a common characteristicmobility.
In its effort to implement both article VII, section 4 and article VII, section 1 of the Florida Constitution, the Legislature passed three statutes that we must consider. Section 320.01(2)(a), Florida Statutes (1996) provides:
"Mobile home" means a structure, transportable in one or more sections, which is 8 body feet or more in width and which is built on an integral chassis and designed to be used as a dwelling when connected to the required utilities and includes the plumbing, heating, air-conditioning and electrical systems contained therein.[2]
If our inquiry stopped there, Appellants would clearly be entitled to relief because their homes fit within this definition, thus allowing them to claim exemption from ad valorem taxation under article VII, section 1(b). However, we must consider the effect of section 320.015(1), Florida Statutes (1996) that provides:
A mobile home, as defined in s. 320.01(2), regardless of its actual use, shall be subject only to a license tax unless classified and taxed as real property. A mobile home is to be considered real property only when the owner of the mobile home is also the owner of the land on which the mobile home is situated and said mobile home is permanently affixed thereto.
Finally, section 193.075(1), Florida Statutes (1996) provides:
A mobile home shall be taxed as real property if the owner of the mobile home is also the owner of the land on which the mobile home is permanently affixed. A mobile home shall be considered permanently affixed if it is tied down and connected to the normal and usual utilities.[3]

*654 THE STANDARD OF REVIEW
In considering the constitutionality of these statutes, we observe the basic rule of statutory construction that statutes which relate to the same or closely related subject or object are regarded as in pari materia and must be construed together and compared with each other. Ferguson v. State, 377 So.2d 709, 711 (Fla.1979); Alachua County v. Powers, 351 So.2d 32, 40 (Fla.1977). The doctrine of in pari materia requires courts to construe related statutes together so that they illuminate each other and are harmonized. Singleton v. Larson, 46 So.2d 186 (Fla.1950). This rule requires us to construe sections 193.075(1), 320.01(2)(a) and 320.015(1) together and to harmonize them, if possible.
A trial court decision regarding the constitutionality of a statute is reviewed de novo because it presents a pure question of law. Dep't of Ins. v. Keys Title & Abstract Co., 741 So.2d 599, 601 (Fla. 1st DCA 1999), rev. denied, 770 So.2d 158 (Fla.2000). However, there is a strong presumption that statutes are constitutionally valid. In re Estate of Caldwell, 247 So.2d 1, 3 (Fla.1971); Libertarian Party of Florida v. Smith, 660 So.2d 807, 807 (Fla. 1st DCA 1995). We are obligated to interpret statutes in such a manner as to uphold their constitutionality if it is reasonably possible to do so. Capital City Country Club v. Tucker, 613 So.2d 448, 452 (Fla.1993).

ARTICLE I, SECTION 2 (THE EQUAL PROTECTION CLAIM)
Whether a mobile home is subject to ad valorem, taxation as real property depends on whether the owner of the mobile home also owns the land upon which the mobile home is permanently affixed. § 193.075(1), Fla. Stat. (1996). Appellants claim that this distinction violates the equal protection clause found in article I, section 2 of the Florida Constitution.[4] We must, therefore, decide whether the Legislature may subject one class of mobile home owners (those who own the real property underneath their mobile homes) to ad valorem taxes while exempting another class of mobile home owners (those who lease the land beneath their mobile homes) from such taxes.
The constitutionality of section 193.075 was first considered in Nordbeck v. Wilkinson, 529 So.2d 360 (Fla. 2d DCA 1988). There, the court held
[P]laintiff first contends that ad valorem taxation of his mobile home was improper in light of article VII, section 1(b) of the 1968 Florida Constitution which provides that "mobile homes, as defined by law, shall ... not be subject to ad valorem taxes." However, that contention overlooks the portion of article VII, section 1(b) which qualifies the term "mobile homes" by the phrase "as defined by law." The law, by virtue of section 320.015(1), Florida Statutes (1987), takes mobile homes which are permanently affixed to land owned by the mobile home owner out of the definition of mobile homes, as referred to in article VII, section 1(b) and puts them into the category of taxable real property.
Nordbeck, 529 So.2d at 361; see also Florida Manufactured Hous. Ass'n v. Dep't of Revenue, 642 So.2d 626, 627 (Fla. 1st DCA 1994) ("We reject the argument that section 193.075, Florida Statutes (1991) is unconstitutional.").
While the State must afford all persons equal protection of the law, this requirement does not deprive the Legislature of all power of classification. See Keys Title, 741 So.2d at 601. Indeed, in *655 the field of taxation particularly, the Legislature possesses great freedom in classification, and the burden is on the one attacking the legislative enactment to negate every conceivable basis which might support it. Eastern Air Lines, Inc. v. Dep't of Revenue, 455 So.2d 311, 314 (Fla.1984). The issue is not whether the statute distinguishes one class of persons or property from another, but whether that distinction is proper, given the purposes of the statute.
An equal protection challenge to a statute that does not involve a fundamental right or suspect classification is evaluated by the rational relationship test.[5]Keys Title, 741 So.2d at 602 (citing Hodel v. Indiana, 452 U.S. 314, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981)). Under this test, a court must uphold a statute if the classification bears a rational relationship to a legitimate governmental objective.
Proper application of the rational relationship test requires a court to determine (1) whether the challenged statute serves a legitimate governmental purpose and (2) whether it was reasonable for the Legislature to believe that the challenged classification would promote that purpose. Keys Title, 741 So.2d at 602. Raising revenue is a legitimate purpose for enacting legislation. In re Advisory Opinion to the Governor, 509 So.2d 292, 303 (Fla.1997). Thus, the first prong of the rational relationship test has been met. Next, we must determine if the classification imposed by operation of the challenged statute promotes the legislative objective.
As Judge Padovano wrote in Keys Title: The rational relationship test does not focus on the wisdom of a particular legislative classification. Instead, the court must examine the potential reasons for treating one class of persons differently from another. As the Florida Supreme Court explained, a statute meets the rational relationship test if "any state of facts can reasonably be conceived that will sustain the classification attempted by the Legislature." See North Ridge General Hospital v. City of Oakland Park, 374 So.2d 461, 464 (Fla.1979), citing Lewis v. Mathis, 345 So.2d 1066, 1068 (Fla.1977); see also Gallagher v. Motors Insurance Corporation, 605 So.2d 62, 69 (Fla.1992) (holding that an equal protection challenge must be rejected if there is a "plausible reason" for the classification). It would be proper to sustain an equal protection challenge to a statute only if "the Legislature could not have had any reasonable ground for believing that there were public considerations justifying the particular classification and distinction made." North Ridge General Hospital, 374 So.2d at 465. This definition of the test imposes a heavy burden on the party challenging a statute on equal protection grounds.
Keys Title, 741 So.2d at 602.
The issue is not, as Appellants contend, that mobile homes are treated differently for tax purposesclearly they are. Rather, the issue is whether that distinction is appropriate, given the purpose of the statute. Considering the constitutional and statutory framework previously discussed, we believe the Legislature could have imposed a tax on all mobile homes permanently affixed to real property, irrespective of who owns the underlying realty, by statutorily recognizing that mobile homes cease to be mobile once permanently affixed to real property. Viewed thusly, the challenged statute may be underinclusive; that is to say it may exclude potential taxpayers who could be constitutionally included. Even so, a law is not constitutionally defective simply because it contains classifications that are underinclusive; that is, which do not include *656 all who are similarly situated, and thereby burden less than would be logical to achieve the intended government end. State v. Peters, 534 So.2d 760, 763 (Fla. 3d DCA 1988); Laurence H. Tribe, American Constitutional Law, § 16-4, at 1447 (2d ed.1988); see also Williamson v. Lee Optical, 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955).
We believe it was reasonable for the Legislature to conclude that a mobile home is more akin to a permanent structure than a mobile one when the mobile home owner owns the underlying land rather than leasing it.[6] Whether this is in fact true is irrelevant. See Florida High Sch. Activities Ass'n v. Thomas, 434 So.2d 306, 308 (Fla.1983) ("Under a `rational basis' standard of review a court should inquire only whether it is conceivable that the regulatory classification bears some rational relationship to a legitimate state purpose."). Thus, we conclude that the Legislature had a valid reason to classify mobile homes as real property when there exists a commonality of ownership with the underlying real property and to exclude mobile homes affixed to leased land from ad valorem taxes.

ARTICLE VII, SECTION 1(b)
Appellants also contend that section 193.075 unconstitutionally conflicts with article VII, section 1(b) of the Florida Constitution. They assert that the statutory definition of "mobile home" is unconstitutional because it is unreasonable and departs from the normal and ordinary understanding of what a mobile home is. Essentially, Appellants claim that the Legislature has impermissibly defined mobile homes by reference to whether or not the home is permanently affixed to real property.
In support of their argument, Appellants rely on Department of Revenue v. Florida Boaters Ass'n, 409 So.2d 17 (Fla. 1981). In that case, the Florida Supreme Court declared unconstitutional a statute that excluded "live-aboard vessels" from the definition of "boats" for purposes of the exemption from ad valorem taxation in article VII, section 1(b) of the Florida Constitution. In doing so, the court recognized the Legislature's authority to define "boats" under article VII, but stated that such authority must be exercised in a reasonable manner. The court further held that the legislative definition may not depart from the normal and ordinary meaning of "boats."
However, in asserting that the current definition of "mobile homes" departs from the normal and ordinary meaning of the term, Appellants ignore key language in the Florida Boaters opinion wherein the court said: "If a floating structure, ostensibly a `boat' as ordinarily understood, is somehow rendered incapable of such uses, then the Legislature may, under article VII, section 1(b), declare that it is not a `boat.'" Florida Boaters, 409 So.2d at 20. The statutory scheme for defining mobile homes fits within this language. The exemption for mobile homes in article VII, section 1(b) was intended to apply to modes of transportation, not fixtures used as residences. Cf. Palethorpe v. Thomson, 171 So.2d 526 (Fla.1965) (construing predecessor provision in 1885 Florida Constitution). The challenged statute only strips mobile homes of their constitutional exemption when they become affixed to real property. See § 193.075, Fla. Stat. (1996). As a fixture, the mobile home loses its mobile character. Hence, classifying it as real property is consistent with the normal and ordinary meaning of "mobile home," as used by the drafters of the constitution. Thus, the statutory definition of "mobile home" is valid under article VII, section 1(b) and Florida Boaters.
*657 In our view, section 193.075, Florida Statutes (1996) is rationally related to a valid governmental purpose and is reasonably designed to achieve that purpose. For those reasons, we conclude that the statute does not violate Appellants' rights to equal protection of the law. We further hold that the legislative definition of "mobile home" is not invalid under article VII, section 1(b) of the Florida Constitution.
AFFIRMED.
COBB and GRIFFIN, JJ., concur.
NOTES
[1] An ad valorem tax is a tax upon the value of the article or thing subject to taxation. Black's Law Dictionary 51 (6th ed.1990).
[2] A similar, but slightly different definition of the term "mobile home" can be found in section 723.003(3), Florida Statutes (1996).
[3] To be utilized as a residence, all mobile or, manufactured homes, whether located on a leased lot or on privately owned land must be tied down and connected to utilities in the same manner. Thus, all manufactured or mobile homes must be permanently affixed unless they are waiting to be sold by mobile home dealers or are utilized for non-residential purposes. See §§ 320.822(14), 320.8285(3), 320.8325(1), Fla. Stat. (1996).
[4] That provision provides: "All natural persons... are equal before the law...."
[5] Appellants do not claim to constitute a suspect class nor do they claim that a fundamental right is at stake.
[6] We note that chapter 723, Florida Statutes (1996) provides a number of grounds upon which a mobile home park owner may evict a mobile home owner or a mobile home from a lot leased in a mobile home park or change the use of the land comprising the mobile home park entirely. See § 723.061, Fla. Stat. (1996). Eviction and land use changes are not concerns of mobile home owners whose homes are affixed to their own property.