PETERSON, J.
State Farm Mutual Automobile Insurance Co. (State Farm), appeals a final judgment awarded to Dan Ray Warren, State Farm’s insured, and Dr. Jack Rot-stein, M.D., Warren’s physician. The county court entered the judgment after holding section 627.736(5)(b), Florida Statutes (1999), unconstitutional as violative of Dr. Rotstein’s rights to equal protection, due process and access to the courts.[1]
Section 627.736(5)(b)[2] provides that “the insurer is not required to pay [for] charges for treatment or services rendered more than 30 days before the postmark date of the statement [of charges]_” The statute also provides that, “[t]he injured party is not hable for, and the provider shall not bill the injured party for, charges that are unpaid because of the provider’s failure to comply with this paragraph.”
Warren was injured in a motor vehicle accident on March 22, 1999 and received treatment from Dr. Jack Rotstein on May 27, June 16, and July 6, 1999. Dr. Rot-stein, failed to submit statements for his medical services to State Farm until August 9, 1999, more than thirty days after the services were rendered. Because the statements were statutorily delinquent, State Farm denied payment to Dr. Rot-stein.
Although Warren incurred no liability for the treatments because he enjoyed immunity under the statute for Dr. Rotstein’s tardy statements, he initiated an action for non-payment against State Farm and eventually joined Dr. Rotstein as a party plaintiff.
The county court agreed with Dr. Rot-stein’s allegations that the thirty-day billing requirement of section 627.736(5)(b) is an “irrational legal hoop” and should be declared unconstitutional. The court found that “it [the statute] denies equal protection under the Florida Constitution to health care providers such as Dr. Rot-stein by differentiating his bills from hospital and ambulance bills,” that the statute “is not reasonably related to a legitimate legislative object [sic]”, “violates the due process provisions of the Florida Constitution,” and that it “denies medical providers who are not hospitals and ambulance companies access to the courts.” The court then entered judgment for $1,640.25 plus interest to Dr. Rotstein and awarded attorney’s fees and costs in the amount of $12,699.26 pursuant to section 627.736(8), Florida Statutes (1999).
State Farm urges that we dismiss the appeal because the Florida Attorney General was not joined in this action as required by section 86.091, Florida Statutes (1999), when the constitutionality of a statute is challenged. However, State Farm raises the non-joinder for the first time on this appeal and invited the county court to determine constitutionality in its joint pre-trial statement. Because State Farm requested that the trial court determine the issue of the statute’s constitutionality and ignored the requirement at the trial level, we find it has waived the right to challenge the non-joinder. Additionally, *1077 we have ignored the requirement since we find the statute to be constitutionally valid.
It is well established that when the constitutionality of a statute is at issue, courts must find the statute valid if there is any reasonable basis for doing so. See generally 10 Fla. Jur.2d Constitutional Law § 94. Accordingly, when a trial court has declared a statute unconstitutional, the reviewing court must begin the process of appellate review with a presumption that the statute is valid. E.g., State, Dept. of Ins. v. Keys Title & Abstract Co., 741 So.2d 599 (Fla. 1st DCA 1999), rev. denied, 770 So.2d 158 (Fla.2000). The burden of proving the unconstitutionality of a statute is upon the party challenging its validity, and this challenger must show that beyond all reasonable doubt the statute conflicts with some designated provision of the constitution. E.g., A.B.A. Industries, Inc. v. City of Pinellas Park, 366 So.2d 761 (Fla.1979).
EQUAL PROTECTION
The county court found that section 627.736(5)(a) denied Dr. Rotstein equal protection of the law, contrary to Article I, Section 2 of the Florida Constitution and the Fourteenth Amendment of the United States Constitution because the statute distinguishes between health care providers, such as Dr. Rotstein, and services provided by hospitals and ambulance providers. The county court found the different classifications to be unreasonable and not related to a legitimate state purpose.
 An equal protection challenge to a statute that does not involve a fundamental right or suspect classification is evaluated by the rational basis test. E.g., Keys Title & Abstract Co., 741 So.2d at 602; see also Florida League of Cities, Inc. v. Dep’t of Environmental Regulation, 603 So.2d 1363 (Fla. 1st DCA 1992). The test requires that a statutory classification bear some reasonable relationship' to the achievement of a legitimate state purpose. E.g., Pinillos v. Cedars of Lebanon-Hospital Corp., 403 So.2d 365 (Fla.1981).
We agree with State Farm that the Legislature had a legitimate state purpose for distinguishing between services provided by medical providers and services provided by hospital emergency departments and ambulance providers. The Legislature recognized that a PIP insurer should be entitled to deny payment for treatment whén the treatment is not reasonable, not related to the covered motor vehicle accident, or not necessary. House of Representatives Committee on Financial Services, Bill Research & Economic Statement dated Dec. 11, 1997.' Refusal to pay for treatment is usually based on an independent medical examination (IME) conducted by a physician selected by the insurer. In order for an insurer to exercise its right to require an IME, it must be aware that treatment is being provided, but there is no statutory authorization for an insurer under a PIP policy to require notice of treatment. The absence of a notice requirement could allow an insured to receive a lengthy series of treatments and be fully recovered before the insurer becomes aware of the treatment. In that situation, the insurer could lose its ability to determine whether the treatment was reasonable, related, or necessary. Section 627.736(5)(b) seeks to remedy the absence of a notice requirement by requiring timely statements from medical providers so that a PIP insurer would be aware of the commencement of treatment and would be in a better position to assure that treatment is reasonable, related to the motor vehicle accident, or necessary. The timely statement requirement also reduces the practice of bulk billing by some medical providers which occurs when treatments are ren *1078 dered over a period of time and the insurer is subsequently billed for multiple treatments. In turn, this lowers the insurer’s cost of providing PIP coverage and makes the IME a more effective cost-control tool. These savings benefit consumers by reducing the costs upon which insurers base PIP premiums.
There is a logical explanation for placing a statutory time limit upon medical providers and not hospital emergency departments and ambulance providers. Medical providers frequently provide ongoing medical treatment involving regular office visits for chiropractic treatment, physical therapy, orthopedic care, and the like. Conversely, services provided by a hospital emergency room or ambulance provider usually occur only once, immediately following the motor vehicle accident. Unlike ongoing medical and chiropractic treatment, determining whether services provided by a hospital emergency room department or an ambulance provider were necessary and related to the motor vehicle accident is usually a straightforward process. We find that the different billing requirements are calculated to reduce unnecessary medical costs which in turn lowers the costs upon which insurers base PIP premiums and ultimately benefits consumers. Section 627.736(5)(b) is rationally related to this legitimate state purpose, and the classifications within the statute are reasonably designed to achieve that purpose.
DUE PROCESS
The county court also found that section 627.736(5)(b) deprived Dr. Rotstein of his constitutional right to due process of law contrary to Article 1, Section 9, Florida Constitution and the Fourteenth Amendment of the United States Constitution. While equal protection concerns legislative classifications, due process of law protects against legislative deprivation of life, liberty, or property. See generally United Yacht Brokers, Inc. v. Gillespie, 377 So.2d 668 (Fla.1979). The test applied, when no fundamental rights are at stake, is basically the same under either constitutional provision. Id. at 671; see also Mizrahi v. North Miami Medical Center, 712 So.2d 826, n. 3 (Fla. 3d DCA 1998), aff'd, 761 So.2d 1040 (Fla.), reh’g denied, (July 5, 2000)(where no fundamental right is at stake, the standard for evaluating substantive due process challenges is virtually identical to the rational basis test for evaluating equal protection challenges); see generally Nationwide Mutual Fire Ins. Co. v. Pinnacle Medical, Inc., 753 So.2d 55 (Fla.2000)(citing to Lasky v. State Farm Ins. Co., 296 So.2d 9 (Fla.1974), the court instructed that in order to determine whether a statute violates due process, a determination must be made as to whether the statute bears a reasonable relationship to a legitimate legislative objective and is not discriminatory, arbitrary or oppressive). Therefore, the rational basis analysis applied to the claim that section 627.736(5)(b) is unconstitutionally violative of Dr. Rotstein’s rights to equal protection also applies to the claim that the same statute is unconstitutionally violative of Dr. Rotstein’s rights to due process. Accordingly, we find that section 627.736(5)(b) does not violate medical providers’ due process rights.
ACCESS TO THE COURTS
Finally, the county court found that section 627.736(5)(b) violates Article I, section 21, of the Florida Constitution, in that access to the courts has been denied to medical providers, such as Dr. Rotstein, who fail to timely submit statements for services. See generally Kluger v. White, 281 So.2d 1 (Fla.1973). We do not agree.
*1079 The statute merely imposes a reasonable restriction or a condition precedent to the filing of a claim. Cf. Mitchell v. Moore, 786 So.2d 521 (Fla.2001)(statute at issue violated prisoner’s constitutional rights by creating an insurmountable obstacle to his right to access to the courts); Nationwide Mutual Fire Ins. Co. v. Pinnacle Medical, Inc., 753 So.2d 55 (Fla.2000). See also Blizzard v. W.H. Roof Co., Inc., 556 So.2d 1237 (Fla. 5th DCA 1990), approved by, 573 So.2d 334 (Fla.1991)(un-der Florida law there is no constitutional violation where a statute merely shortens the time period during which an action may be brought). The requirement that a statement be rendered in a timely manner is satisfied by a simple management system and paves the way for early payment to the medical provider. We also disagree with Dr. Rotstein and Warren that there is a conflict between section 627.736(5)(b), which establishes the 30-day period and section 95.11(2)(b), which affords medical providers five years to initiate claims to recover the insureds’ PIP benefits. Had Dr. Rotstein complied with section 627.736(5)(b), and had State Farm denied the bills for some other reason, Dr. Rot-stein would still have had five years to assert a cause of action against State Farm.
Because we disagree with the county court’s determination that section 627.736(5)(b), Florida Statutes (1999), violates the federal and Florida constitutions, we vacate the lower court’s summary final judgment for damages, interest, costs and attorneys’ fees and upon remand direct that judgment be entered in favor of State Farm due to Dr. Rotstein’s failure to timely submit his statements for medical services.
REVERSED AND REMANDED.
SAWAYA and PLEUS, JJ., concur.
ADDENDUM
627.736(5) CHARGES FOR TREATMENT OF INJURED PERSONS.—
(b) With respect to any treatment or service, other than medical services billed by a hospital for services rendered at a hospital-owned facility, the statement of charges must be furnished to the insurer by the provider and may not include, and the insurer is not required to pay, charges for treatment or services rendered more than 30 days before the postmark date of the statement, except for past due amounts previously billed on a timely basis under this paragraph, and except that, if the provider submits to the insurer a notice of initiation of treatment within 21 days after its first examination or treatment of the claimant, the statement may include charges for treatment or services rendered up to, but not more than, 60 days before the postmark date of the statement. The injured party is not liable for, and the provider shall not bill the injured party for, charges that are unpaid because of the provider’s failure to comply with this paragraph. Any agreement requiring the injured person or insured to pay for such charges is unenforceable. For emergency services and care as defined in s. 395.002 rendered in a hospital emergency department or for transport and treatment rendered by an ambulance provider licensed pursuant to part III of chapter 401, the provider is not required to furnish the statement of charges within the time periods established by this paragraph; and the insurer shall not be considered to have been furnished with notice of the amount of covered loss for purposes of paragraph (4)(b) until it receives a statement complying with paragraph (5)(d), or copy thereof, which specifically identifies the place of service to be a hospital emergency department or an ambulance in accordance with *1080 billing standards recognized by the Health Care Finance Administration....

. The county court certified this case to be of “great public importance thereby invoking the discretionary jurisdiction of this court.” Fla. R.App. P. 9.030(b)(4).

. The full text of the statute is set forth in the addendum to this opinion.