840 So.2d 993 (2003)
Barry I. HECHTMAN, et al., Petitioners,
v.
NATIONS TITLE INSURANCE OF NEW YORK, et al., Respondents.
No. SC00-2242.
Supreme Court of Florida.
February 6, 2003.
*994 Hendrik G. Milne of Aballi, Milne, Kalil & Garrigo, P.A., Miami, FL, for Petitioners.
James S. Telepman of Cohen, Norris, Scherer, Weinberger & Wolmer, North Palm Beach, FL; and Robert A. Cohen of Cohen/Fox, P.A., Miami, FL, for Respondents.
QUINCE, J.
We have for review a decision on the following question certified by the Third District Court of Appeal to be of great public importance:

*995 WHETHER § 627.792, FLA. STAT. (1997), WHICH PROVIDES THAT AN INSURER IS LIABLE FOR THE MISFEASANCE OF A "LICENSED TITLE INSURANCE AGENT" APPLIES TO A TITLE INSURANCE AGENT WHO IS AN ATTORNEY AND IS THEREFORE EXEMPT FROM LICENSING AS A TITLE INSURANCE AGENT BY THE DEPARTMENT OF INSURANCE UNDER § 626.8417, FLA. STAT. (1997).
Hechtman v. Nations Title Ins. New York, Inc., 767 So.2d 505, 509 (Fla. 3d DCA 2000). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons set forth below, we answer the certified question in the negative and find that section 627.792, Florida Statutes (1997), does not apply to attorneys who are acting as title insurance agents if those attorneys are exempt from the licensing requirements of section 626.8417, Florida Statutes (1997).
Barry and Brenda Hechtman brought suit against Nations Title Insurance of New York (Nations Title) and Commonwealth Land Title Insurance Company (Commonwealth), pursuant to section 627.792, Florida Statutes (1997), alleging that Nations Title and Commonwealth were liable to them for the defalcation of funds committed by a licensed Florida attorney who was serving as a title insurance agent on behalf of the insurance companies. The attorney held the Hechtmans' funds in his attorney escrow account and subsequently misappropriated the funds for his own use. Section 627.792 makes title insurers liable for the defalcation of funds by their licensed title agents if the funds are held in trust pursuant to section 626.8473, Florida Statutes (1997). Specifically, section 627.792 provides as follows:
A title insurer is liable for the defalcation, conversion, or misappropriation by a licensed title insurance agent of funds held in trust by the agent pursuant to s. 626.8473. If the agent is licensed by two or more title insurers, any liability shall be borne by the title insurer upon which a title insurance binder, commitment, policy, or title guarantee was issued prior to the illegal act. If no binder, commitment, policy, or guarantee was issued, each title insurer represented by the agent at the time of the illegal act shares in the liability in the same proportion that the premium remitted to it by the agent during the 1 year period before the illegal act bears to the total premium remitted to all title insurers by the agent during the same time period.
Generally, however, attorneys licensed to practice law in Florida who serve as title insurance agents are statutorily exempt from the title insurance licensing requirements. See § 626.8417(4)(a), Fla. Stat. (1997). Attorneys who are exempt from the title insurance licensing requirements may act as escrow agents and hold funds in their attorney trust accounts pursuant to Rules Regulating the Florida Bar 4-1.15, 5-1.1, and 5-1.2. Ordinarily, a nonattorney may not act as an escrow agent; however, the nonattorney may do so pursuant to section 626.8473 if he or she is licensed as a title insurance agent under section 626.8417. In most cases, attorneys act as title insurance agents pursuant to their license to practice law, not by virtue of a license issued by the Department of Insurance; therefore, they hold the insured's funds in escrow pursuant to the Rules Regulating the Florida Bar.
The Hechtmans argue that it is irrelevant whether the title insurance agent is acting pursuant to a license to practice law or pursuant to a license issued by the Department of Insurance, and it does not matter if their funds were held in escrow pursuant to the authority granted *996 by section 626.8473 or the authority of the Rules Regulating the Florida Bar. The Hechtmans maintain that the intent of section 627.792 is to hold a title insurer liable for the defalcation of funds held in escrow by any of its agents, regardless of the authority under which the agent acts.
The question presented here is whether the Legislature intended to include in section 627.792 title insurance agents not licensed under chapter 627, Florida Statutes (1997). Legislative intent is the polestar by which a court must be guided in interpreting the provisions of a law. See City of Clearwater v. Acker, 755 So.2d 597 (Fla.1999). In ascertaining the legislative intent, a court must consider the plain language of the statute, give effect to all statutory provisions, and construe related provisions in harmony with one another. See M.W. v. Davis, 756 So.2d 90 (Fla.2000); Hawkins v. Ford Motor Co., 748 So.2d 993 (Fla.1999). To that end, we are required to consider and give meaning to the Legislature's reference to section 626.8473 in section 627.792 and give meaning to the language which limits a title insurer's liability for defalcation of funds by its agents to those "funds held in trust by the agent pursuant to § 626.8473." § 627.792, Fla. Stat. (1997). Not all title insurance transactions involve funds held in trust pursuant to section 626.8473, and if the funds are not held in trust pursuant to section 626.8473, we cannot impute liability to the insurer. The language of the statute, as well as the legislative intent, is clear in this regard.
The Hechtmans argue that the word "licensed," which is used in the first two sentences of section 627.792, has a different meaning in each sentence. The Hechtmans claim that in the first sentence of the statute, the word "licensed" means licensed by the Department of Insurance, but in the second sentence, the word "licensed" should be read in a broad sense to mean appointed or given permission to act by the title insurers. Giving the word "licensed" two different meanings within the same statute, the Hechtmans argue, is the only logical way to effectuate the Legislature's intent to protect the public from any title insurance agent who misappropriates funds from a trust account. The Hechtmans further argue that there is no rational basis to rule otherwise and to do so would be a violation of their equal protection rights. We disagree.
First, if we were to read the statute in the manner proposed by the Hechtmans, we would necessarily be required to ignore the language in the first sentence of the statute that limits liability for the defalcation of only those funds held in trust pursuant to section 626.8473. It is an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage. See Hawkins v. Ford Motor Co., 748 So.2d 993 (Fla.1999).
Second, in the absence of a fundamental right or a protected class, equal protection requires only that a distinction which results in unequal treatment bear some rational relationship to a legitimate state purpose. See Duncan v. Moore, 754 So.2d 708 (Fla.2000). In this case, there is no fundamental right or protected class involved. To properly apply the rational basis test, we must determine (1) whether the statute serves a legitimate governmental purpose, and (2) whether it was reasonable for the Legislature to believe that the challenged classification would promote that purpose. See State Dep't. of Ins. v. Keys Title & Abstract Co., 741 So.2d 599, 602 (Fla. 1st DCA 1999) (citing Western & Southern Life Ins. Co. v. State Bd. of Equalization, 451 U.S. 648, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981); Minnesota v. Clover *997 Leaf Creamery Co., 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981)). As the First District stated in Keys Title, "[i]t would be proper to sustain an equal protection challenge to a statute only if `the Legislature could not have had any reasonable ground for believing that there were public considerations justifying the particular classification and distinction made.'" 741 So.2d at 602 (quoting North Ridge General Hosp. v. City of Oakland Park, 374 So.2d 461, 465 (Fla.1979)).
In this case, the Legislature reasonably distinguished between those title insurance agents doing business pursuant to a license issued by the Department of Insurance and those doing business pursuant to a license to practice law. The Department of Insurance does not have the authority to regulate attorneys and may not oversee or enforce the trust account requirements mandated by the Rules Regulating the Florida Bar. Furthermore, to allow the Department of Insurance access to attorney trust accounts would jeopardize the attorney-client privilege and infringe upon this Court's authority to regulate the practice of law in Florida. Additionally, victims of those lawyers who are exempt from the Department of Insurance licensing requirements, such as the Hechtmans, may seek compensation from the Clients' Security Fund offered through The Florida Bar.
It is reasonable to conclude that by enacting section 627.792, the Legislature intended to create an avenue of relief for victims of nonattorney title insurance agents that otherwise did not exist. It is not within our authority to pass upon the wisdom of the Legislature's classification. We must only consider whether there are any reasonable facts to support the classification attempt made by the Legislature. See Gallagher v. Motors Ins. Corp., 605 So.2d 62, 69 (Fla.1992) (holding that an equal protection challenge must be rejected if there is a "plausible reason for the classification"); Lewis v. Mathis, 345 So.2d 1066 (Fla.1977); Keys Title, 741 So.2d at 602 (citing North Ridge General Hosp. v. City of Oakland Park, 374 So.2d 461 (Fla. 1979)). In this case, section 627.792 serves the legitimate governmental purpose of providing an avenue of civil relief for a certain class of victims of defalcation, conversion, or misappropriation of funds held in escrow accounts pursuant to section 626.8473, as this particular class would not otherwise have a civil remedy. Further, it is reasonable for the Legislature to believe that exempting title insurers from liability for certain acts committed by attorneys who act pursuant to their license to practice law would promote that purpose because the victims of these attorneys have other avenues for relief.
We acknowledge Judge Schwartz's dissent in the court below. Judge Schwartz views section 626.792 as holding title insurers responsible for the defalcation of funds by any agent acting on the insurers' behalf, be it an agent licensed by the Department of Insurance or an attorney authorized by virtue of a license to practice law. We disagree, however, and find that the plain language of the statute indicates that the statute is not intended to protect all insureds, but only those who obtain title insurance through agents licensed under 626.8417.
For the reasons set forth above, we answer the certified question in the negative and approve the Third District's decision.
It is so ordered.
ANSTEAD, C.J., WELLS, PARIENTE, and LEWIS, JJ., and SHAW and HARDING, Senior Justices, concur.