# Third District Court of Appeal

## State of Florida

Opinion filed December 7, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-2477
Lower Tribunal No. 20-7339
_____


**Dr. David Fintan Garavan,**
Petitioner,

vs.

**Miami-Dade County, Florida,**
Respondent.


A Writ of Certiorari to the Circuit Court for Miami-Dade County, Valerie R. Manno Schurr, Judge.

Sharp Law Firm, P.A., and Christopher C. Sharp (Fort Lauderdale), for petitioner.

Geraldine Bonzon-Keenan, Miami-Dade County Attorney and Leona N. McFarlane, Assistant County Attorney, for respondent.


Before FERNANDEZ, C.J., and EMAS and BOKOR, JJ.

BOKOR, J.

Dr. David Garavan seeks certiorari relief from a trial court order denying his motion seeking temporary reinstatement to his former position as deputy medical examiner under Florida's Whistleblower Act. See § 112.3187(9)(f), Fla Stat. (setting forth temporary reinstatement requirements and procedures). Miami-Dade County opposes the relief on two grounds: first, that the county is a municipality, which the statutory provision exempts from the temporary reinstatement requirement, and second, that Dr. Garavan failed to exhaust his administrative remedies.

We start with the applicable statutory language. Section 112.3187(9)(f) requires, under certain conditions, temporary reinstatement to the employee's former position (or an equivalent position) pending the final outcome of an action for reinstatement. However, the final sentence of the pertinent section explains that "[t]his paragraph does not apply to an employee of a municipality." So, we must first determine whether Miami-Dade County, Garavan's employer, is a municipality, as contemplated by the statute. The County first urges us to use the common understanding of the words which, it asserts, mean that Miami-Dade County is a municipality.[1]

---

[1] As explained by our sister court:

Where the legislature has not defined words in a statute, the language should be given its plain and ordinary meaning. Sch. Bd. of Palm Beach Cnty. v. Survivors Charter Schs., Inc., 3 So.

2

Using the applicable dictionary definitions, a county is "the largest territorial division for local government within a state of the U.S." County, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/county (last visited Dec. 2, 2022). A municipality is "a primarily urban political unit having corporate status and usually powers of self-government" or "the governing body of a municipality." Municipality, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/municipality (last visited Dec. 2, 2022). While overlap may exist, these terms aren't synonyms.

Examining the clear and unambiguous text, reading it in context with all relevant constitutional and statutory provisions, and applying any possibly relevant canons of construction, we find no support for considering a county as a municipality under the statute.[2] Notwithstanding the plain language, the

---

3d 1220, 1233 (Fla. 2009). The plain and ordinary meaning of a word or phrase can be ascertained by referring to the dictionary definition. Id.

Nunes v. Herschman, 310 So. 3d 79, 82 (Fla. 4th DCA 2021).

[2] See Nunes, 310 So. 3d at 83–84 (explaining that "[a]lthough the statute is clear and unambiguous, the canons of construction offer further support and confirm our understanding" by examining, *inter alia*, the "ordinary meaning canon of construction" and the "omitted case canon of construction") (citations omitted). As explained throughout, the unambiguous, clear meaning, the ordinary meaning, and every other pertinent canon of construction supports the understanding that a county and a municipality are distinct entities.

County argues that because the Florida Constitution gives Dade County (now Miami-Dade County), the powers of a municipality (in addition to other powers specifically delineated to charter counties), Miami-Dade County must be a municipality. See Art. VIII, § 6(f), Fla. Const. The provision at issue explains that "the Metropolitan Government of Dade County may exercise all the powers conferred now or hereafter by general law upon municipalities." Id. Contrary to the County's assertion, this constitutional provision prescribing Miami-Dade County the powers of a municipality *supports* the common understanding that a county and a municipality are distinct entities, and only by the enactment of the referenced constitutional provision may Miami-Dade County exercise otherwise unenumerated municipal powers.[3]

The structure of government under the state constitution relies on the fundamental distinction between state, county, and municipal government. Article VIII, Section 1 defines counties as "political subdivisions" of the state of Florida. Art. VIII, § 1(a), Fla. Const. Section 2 defines municipalities as

---

[3] Essentially, the County argues that because sometimes, under some circumstances, a county and a municipality exercise some of the same powers, or are subject to similar oversight, they are fundamentally the same. But context matters. The only reason a county can exercise municipal powers is because the constitution, charter, or law authorizes such exercise, despite the state constitution's clear delineation of county and municipality as separate entities.

4

established by general or special law and imbued with "governmental, corporate and proprietary powers to enable them to conduct municipal government." Art. VIII, § 2(b), Fla. Const. The fact that the Florida Constitution explicitly gave Miami-Dade County the right to exercise municipal powers doesn't change the underlying fact that it is still a county as defined by the Florida Constitution, not a municipality. If Miami-Dade County were a municipality, the provision of the constitution explicitly providing it with municipal powers would be rendered mere surplusage.[4]

In addition to the state constitution, the context of the statutory section at issue supports the plain and ordinary understanding of the terms municipality and county as distinct entities. Section 112.3187 doesn't define "municipality," but it defines "[a]gency," in pertinent part, as "any state, regional, **county**, local, or **municipal** government entity." § 112.3187(3)(a),

---

[4] In finding a municipality to be the same as the county, the trial court ignored words and terms in the same statutory section, as well as entire constitutional provisions. As explained by the Florida Supreme Court, we are required to give effect to "every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage." Am. Home Assurance Co. v. Plaza Materials Corp., 908 So. 2d 360, 366 (Fla. 2005) (quoting Hechtman v. Nations Title Ins., 840 So. 2d 993, 996 (Fla. 2003)). The only way to give effect to every word, to read the statutory scheme (and constitution) holistically, and to account for the omission of the word "county" in enacting municipal immunity, is to come to the inevitable conclusion that we reached after the words hit our brains in the first instance—a county and a municipality are different things.

5

Fla. Stat. (emphasis added). Clearly, the legislature used both county and municipal government as distinct terms when drafting this statutory provision, and the legislature chose to specify that only a municipal government enjoys immunity from the temporary reinstatement provision. Accordingly, whether we rely on the plain and ordinary meaning, the dictionary definition, or the constitutional or statutory usage of the terms, we reach the opposite conclusion from the County and hold that a county and a municipality are distinct units.

We now turn to the administrative exhaustion argument. Specifically, section 112.3187(8)(b) requires that "[w]ithin 60 days after the action prohibited by this section, any local public employee protected by this section may file a complaint with the appropriate local governmental authority, if that authority has established by ordinance an administrative procedure for handling such complaints." The County terminated Dr. Garavan's employment on August 31, 2021. On September 1, 2021, Dr. Garavan concurrently filed an administrative complaint with the County as well as a motion with the trial court for reinstatement under section 112.3187(9)(f). Accordingly, Dr. Garavan timely filed an administrative complaint, and immediately sought reinstatement under the relevant subsection.

6

The trial court declined to order temporary reinstatement and instead ordered Dr. Garavan to exhaust his administrative remedies. However, if we were to agree with the trial court, we would be creating an absurd result—unsupported by specific statutory language—whereby a state employee that appeals his termination under subsection (8)(a) (pertaining to state employees) to the Florida Commission on Human Relations can get his or her job back temporarily because the Florida Commission on Human Relations regularly seeks such temporary reinstatement for employees that engaged in prima facie protected activity, but an employee who appeals his termination under 8(b) is not afforded the same protections. Here, Dr. Garavan seeks review of his termination under subsection (8)(b) (pertaining to local public employees). The county's review board (really, an American Arbitration Association panel operating under the county code) did not seek such temporary reinstatement and does not appear to have any mechanism to do so. Therefore, pursuant to subsection 9(f), Dr. Garavan applied to a court of competent jurisdiction to seek temporary reinstatement. Dr. Garavan's application for relief in the court comports with the statutory scheme. See Dep't of Transp. v. Fla. Comm'n on Hum. Rels, 842 So. 2d 253, 255 (Fla. 1st DCA 2003) (affirming trial court's reinstatement of FDOT employee pursuant to section 112.3187(9)(f)).

7

Accordingly, we find that the trial court departed from the essential requirements of the law in concluding that the clear and unambiguous statutory language provided the County with immunity from the temporary reinstatement provision.[5] The record also demonstrates that Dr. Garavan properly presented the reinstatement request to a court with jurisdiction to consider such request. We therefore grant the petition, quash the order on review, and remand to the trial court to conduct the appropriate proceedings under the statute to determine Dr. Garavan's entitlement to temporary reinstatement.

Petition granted; order quashed.

---

[5] A departure from the essential requirements of law requires "a showing of 'a violation of a clearly established principle of law resulting in a miscarriage of justice.'" Sahmoud v. Marwan, 338 So. 3d 29, 30 (Fla. 3d DCA 2022) (quoting Combs v. State, 436 So. 2d 93, 96 (Fla. 1983)). As the Florida Supreme Court explained:

> "[C]learly established law" can derive from a variety of legal sources, including recent controlling case law, rules of court, *statutes, and constitutional law.* Thus, in addition to case law dealing with the same issue of law, *an interpretation or application of a statute,* a procedural rule, *or a constitutional provision may be the basis for granting certiorari review.*

Dodgen v. Grijalva, 331 So. 3d 679, 684 (Fla. 2021) (emphasis added) (quoting Allstate Ins. Co. v. Kaklamanos, 843 So. 2d 885, 890 (Fla. 2003)).