HERSEY, Judge.
Appealed is a summary final judgment involving the appropriate application of section 627.739(1), Florida Statutes (1981), which permits an insurance company, under limited circumstances, to issue Personal Injury Protection (PIP) insurance coverage with certain deductibles.
On December 15, 1981, appellant issued an automobile insurance policy for personal injury protection to appellee. The policy provided $10,000 of liability insurance with a deductible applicable to the PIP coverage of $8,000. It was issued through Broadway Insurance, Inc., which was an independent insurance broker, not an agent of Fortune. At the time appellee obtained the policy, she was employed as a housekeeper at a condominium and had “health insurance” through her employer.
On June 23, 1982, appellee was involved in an automobile accident, as a result of which she incurred medical expenses and loss of earnings. She subsequently filed a complaint for déclaratory and other relief against appellant, alleging that the $8,000 deductible in the policy should not apply because appellant failed to comply with section 627.739(1), Florida Statutes. Both parties moved for summary judgment. Ap-pellee’s motion was granted, the trial court holding the $8,000 deductible unenforceable.
*253 The applicable version of section 627.-739(1), Florida Statutes (that which was in effect at the time the insurance contract was executed in December 1981, Lumbermens Mutual Casualty Co. v. Ceballos, 440 So.2d 612 (Fla. 3d DCA 1983)), provided in pertinent part:
(1) Insurers shall offer to each applicant and to each policyholder, upon the renewal of an existing policy, deductibles, in amounts of $250, $500, $1,000, $2,000, $3,000, $4,000, $6,000, and $8,000, said amount to be deducted from the benefits otherwise due each person subject to the deduction, and shall explain to each applicant or policyholder that if they have coverage under private pr governmental disability plans, they may avail themselves of deductibles or other modifications as provided in subsections (1), (2), and (3).
Appellee postulates that counsel for the parties stipulated to certain facts on the record including a stipulation that appellee “did not have disability or wage loss protection at the time the PIP policy was purchased.” Appellant strenuously rejects the suggestion that the stipulation included the lack of “disability” loss protection. Review of the record supports appellant’s position. This observation is made only for clarification, the court recognizing that the issue primarily in contention here is whether inquiry was made and if so, its adequacy, rather than the existence vel non of disability coverage.
The PIP coverage in appellee’s policy had a deductible of $8,000. The initial concern is whether a genuine issue of material fact appears from the record as to whether the inquiry mandated by the statute was undertaken by the insurance broker. The insured testified that no such inquiry was ever made. An employee of the independent insurance broker could not recall specifically advising this insured in connection with the possibility of deductibles. She did, however, testify that making such inquiry was standard office procedure and that this procedure “never” varied.
In Lumbermens Mutual Casualty Company v. Alvarez, 443 So.2d 279 (Fla. 3d DCA 1983), summary judgment for the insured was reversed where the president of the insurance agency which took the application testified at deposition that the agency’s standard practice was to ask all applicants if they had other insurance coverage, inform them that other coverage was necessary in order to elect a deductible, and inform them that the agency would not write a deductible policy if they stated they had no other coverage. The court quoted section 90.406, Florida Statutes (1979), which provides:
Evidence of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is admissible to prove that the conduct of the organization on a particular occasion was in conformity with the routine pra ice.-
The court further noted that
While concededly [the agency president’s] testimony as to the routine practice establishes no presumption that it was followed in a particular instance, it is nonetheless sufficient to support an inference by the trier of fact that the practice was followed on the particular occasion in question, notwithstanding that [the insured’s] testimony directly contradicts such an inference.
443 So.2d at 281. See also, Bankers Insurance Co. v. Sosa, 448 So.2d 1181 (Fla. 3d DCA 1984). Cf. Industrial Fire & Casualty Ins. Co. v. Kwechin, 447 So.2d 1337 (Fla.1983) (deductible invalid where insurance agent who wrote policy had actual knowledge that applicant had no collateral coverage).
Appellant takes the position that this conflict in the testimony creates a “genuine issue as to [a] material fact” precluding entry of summary judgment for appellee under Florida Rule of Civil Procedure 1.510(c). We would agree, unless appellee is correct in asserting that, in any event, an inquiry limited to the question of whether a prospective insured has “medical” insurance does not constitute substantial compli- *254 anee with the statute, which speaks of “disability insurance.” We reject this contention.
Section 627.739(1), Florida Statutes, provides that the insurer “shall explain to each applicant ... that if they have coverage under private or governmental disability plans, they may avail themselves of deductibles .... ” The Insurance Code in effect in 1981 defined “disability insurance” as follows:
624.603 “Disability insurance” defined. “Disability insurance,” also known as “health insurance,” is insurance of human beings against bodily injury, disablement, or death by accident or accidental means, or the expense thereof, or against disablement or expense resulting from sickness, and every insurance appertaining thereto. Disability insurance does not include workers’ compensation coverages.
This is a broad definition and would clearly seem to include insurance covering medical expenses. The question remains, however, whether medical insurance is sufficient to constitute coverage under a “disability plan,” as required by section 627.-739(1), or whether a more comprehensive type of coverage, which would include lost wages, is necessary.
Appellee contends all of the benefits required to be provided by the PIP insurer under section 627.736(1), Florida Statutes, under a “no deductible” policy must be provided by the collateral insurance where the PIP insurer writes a policy with a deductible. These required benefits include medical expenses, a percentage of lost income, and funeral expenses. Case law to the contrary, however, has not required the insurer to ascertain whether the applicant’s collateral coverage includes all of these benefits, but only to advise the applicant that in order to avail himself of a deductible he must have “other applicable insurance coverage.” Lumbermens Mutual Casualty Co. v. Herrera, 439 So.2d 301, 302 (Fla. 3d DCA 1983), rev. denied, 449 So.2d 265 (Fla.1984). See also, Lumbermens Mutual Casualty Co. v. Alvarez, 443 So.2d at 280; Bankers Insurance Co. v. Sosa, 448 So.2d at 1182; Chapman v. Dillon, 415 So.2d 12 (Fla.1982).
We find this interpretation of the statutory requirement to be consistent with the legislative intent in enacting the no-fault insurance law “that persons injured in vehicular accidents would receive some economic aid in meeting medical expenses and the like_” Kwechin, 447 So.2d at 1339 (emphasis added). Further, prohibiting an applicant from obtaining a PIP policy with a deductible unless he has other insurance to cover all of his potential types of damages would conflict with the stated purpose of section 627.739(1) to allow deductibles to prevent duplication of benefits. An applicant who had collateral insurance covering some, but not all, of his potential loss would be forced to duplicate that coverage since he could not obtain a deductible. Thus we hold that an explanation that the insured needs collateral “medical” coverage is sufficient to meet the statutory requirement of an explanation that the insured needs collateral “disability” coverage in order to qualify for a policy with a deductible.
Finally, appellant argues that, assuming the independent insurance broker who wrote the application in fact failed to make the proper inquiry, appellant may not be held liable for its defalcations in any event, since the independent broker was not appellant’s agent. The trial court found the broker’s inquiry to have been inadequate. It then proceeded to find the appellant liable for the inadequate inquiry, partially in reliance upon section 626.746, Florida Statutes (1979) (repealed by ch. 80-341, § 9, 1980 Fla.Laws 1424), which provides:
626.746. Furnishing supplies to unlicensed agent prohibited; civil liability and penalty.
(1) No insurer shall furnish to any agent, or prospective agent named or appointed by it, any blank forms, applications, stationery or other supplies to be used in soliciting, negotiating or effecting contracts of insurance, on its behalf until such agent shall have received from *255 the department a license to act as an insurance agent and shall have duly qualified as such.
(2) Any insurer, or any officer, director or agent thereof, violating the provisions of this section shall be guilty of a misdemeanor of the second degree, punishable as provided in s.775.082 or s.775.-083.
(3) Any insurer, general agent, or agent that furnishes to any agent or prospective agent not named or appointed by the insurer represented or supplied with any of the supplies mentioned in subsection (1) and accepts from, or writes any insurance business for, such agent or agency shall be subject to civil liability to any insured of such insurer to the same extent and in the same manner as if such agent or prospective agent had been appointed, licensed, or authorized by the insurer or such agent to act in its or his behalf by the Department of Insurance. The provisions of this subsection shall not apply to insurance risk apportionment plans under s.627.351.
The trial court also relied upon the case of Gaskins v. General Insurance Company of Florida, 397 So.2d 729 (Fla. 1st DCA 1981). In Gaskins, the court found that the insurer was precluded by section 626.-746 from denying coverage to the insureds where the independent agent who wrote the policy misinterpreted one of the questions on the application, resulting in inaccurate information being provided to the insurer.
Because of our holding that the independent broker’s inquiry was proper, Gaskins is not controlling, since it is now unnecessary to consider the liability of the insurer had the inquiry not been proper. The question becomes instead whether an independent broker may fulfill the requirement imposed by statute on the insurer to inquire regarding the existence of collateral coverage. Florida courts have answered this question in the affirmative. For instance, in Bankers Insurance Co. v. Sosa, 448 So.2d at 1181, on rehearing, the appellate court found a material issue of fact precluding summary judgment where the broker’s employee testified that the insured had told him he had other coverage, thus allowing issuance of a policy with a deductible. The court reversed its prior decision (9 F.L.W. 53, Fla. 3d DCA Dec. 27, 1983), which held “[the insurer] was not entitled to rely on any inquiries which were made by the independent insurance broker, Car-ibe, or its agent....”
We therefore reverse the entry of summary judgment for appellee and remand the case to the trial court. A fact question is created by the testimony of the insurance broker’s employee that it was the agency’s standard practice to inform PIP applicants of the need for other medical coverage in order to obtain a policy with a deductible where this testimony conflicts with the appellee’s testimony that this was not discussed. Though the statute places responsibility on the insurer to make this explanation, the agency which completes the application may fulfill the requirement on behalf of the insurer.
REVERSED and REMANDED.
LETTS and GLICKSTEIN, JJ., concur.