899 So.2d 1090 (2005)
Dan Ray WARREN, et al., Petitioners,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.
No. SC02-285.
Supreme Court of Florida.
March 31, 2005.
*1092 Larry Mark Polsky, Daytona Beach, FL, for Appellant.
Karen A. Barnett and Deborah L. Appel of Barnett and Associates, P.A., Tampa, FL, for Appellee.
PER CURIAM.
We have for review a challenge to the constitutionality of section 627.736(5)(b), Florida Statutes (1999), contained in Florida's Motor Vehicle No-Fault Law, which requires providers of non-emergency medical services and medical services not provided in and billed by a hospital to submit a statement of charges to insurers within thirty days of service.[1] The Fifth District Court of Appeal expressly declared the statute valid in State Farm Mutual Automobile Insurance v. Warren, 805 So.2d 1074 (Fla. 5th DCA 2002). Accordingly, we have jurisdiction under article V, section 3(b)(3) of the Florida Constitution. For the reasons discussed below, we approve the decision of the Fifth District Court of Appeal and uphold the constitutionality of the statute.

FACTUAL AND PROCEDURAL BACKGROUND
In State Farm Mutual Automobile Insurance v. Warren, 805 So.2d 1074 (Fla. *1093 5th DCA 2002), the Fifth District summarized the facts as follows:
State Farm Mutual Automobile Insurance Co. (State Farm), appeals a final judgment awarded to Dan Ray Warren, State Farm's insured, and Dr. Jack Rotstein, M.D., Warren's physician. The county court entered the judgment after holding section 627.736(5)(b), Florida Statutes (1999), unconstitutional as violative of Dr. Rotstein's rights to equal protection, due process and access to the courts.
Section 627.736(5)(b) provides that "the insurer is not required to pay [for] charges for treatment or services rendered more than 30 days before the postmark date of the statement [of charges]. . . ." The statute also provides that, "[t]he injured party is not liable for, and the provider shall not bill the injured party for, charges that are unpaid because of the provider's failure to comply with this paragraph."
Warren was injured in a motor vehicle accident on March 22, 1999, and received treatment from Dr. Jack Rotstein on May 27, June 16, and July 6, 1999. Dr. Rotstein, failed to submit statements for his medical services to State Farm until August 9, 1999, more than thirty days after the services were rendered. Because the statements were statutorily delinquent, State Farm denied payment to Dr. Rotstein.
Although Warren incurred no liability for the treatments because he enjoyed immunity under the statute for Dr. Rotstein's tardy statements, he initiated an action for non-payment against State Farm and eventually joined Dr. Rotstein as a party plaintiff.
The county court agreed with Dr. Rotstein's allegations that the thirty-day billing requirement of section 627.736(5)(b) is an "irrational legal hoop" and should be declared unconstitutional. The court found that "it [the statute] denies equal protection under the Florida Constitution to health care providers such as Dr. Rotstein by differentiating his bills from hospital and ambulance bills," that the statute "is not reasonably related to a legitimate legislative object [sic]", "violates the due process provisions of the Florida Constitution," and that it "denies medical providers who are not hospitals and ambulance companies access to the courts." The court then entered judgment for $1,640.25 plus interest to Dr. Rotstein and awarded attorney's fees and costs in the amount of $12,699.26 pursuant to section 627.736(8), Florida Statutes (1999).
Id. at 1076 (footnotes omitted) (alterations in original). State Farm appealed the county court's decision to the Fifth District Court of Appeal, which reversed the county court's ruling and held that section 627.736(5)(b) is constitutional under the federal and state constitutional provisions cited by petitioners. Warren and Rotstein now seek review of the Fifth District's decision in this Court. They assert that the thirty-day provision violates the rights of equal protection and due process[2] and *1094 the right of access to the courts.[3]

Florida's No-Fault Law
Before Florida enacted no-fault legislation, the only form of recovery available for automobile damages was found in traditional theories of tort, which dictated that recovery could only be had if a party proved that the other party was at fault. In response to perceived concerns with this process, Florida's Legislature enacted the Florida Motor Vehicle No-Fault Law, intended to provide prompt compensation for certain categories of harm stemming from motor vehicle accidents under a statutorily mandated form of insurance. Enacted in 1971, the No-Fault Law was intended to provide a minimum level of insurance benefits, including medical benefits, without regard to fault. See United Auto. Ins. Co. v. Rodriguez, 808 So.2d 82, 85 (Fla.2001). As a result, each motor vehicle owner or registrant required to be licensed in Florida is required to carry a minimum amount of personal injury protection, or PIP insurance, for the benefit of the owner and other designees. Section 627.736, Florida Statutes (1999), sets forth required PIP benefits, which are triggered if a loss is reasonable, necessary, and related to a motor vehicle accident. See Rodriguez, 808 So.2d at 85.
Also included in the no-fault statute is a provision for a procedure through which medical providers may file claims and receive payment for services provided. See § 627.736(5)(a), Fla. Stat. (1999). Section 627.736(5)(b) sets forth the procedures with which treating medical providers must comply in order to receive payment from the no-fault insurer for services rendered. Prior to 1998, the only limitation placed on the timely submission of medical provider claims to insurance companies was the five-year statute of limitations for a breach of contract claim. As a result, medical providers could potentially allow charges to mount, and submit charges for services rendered over a long period of time and distant from the time of the original accident.
In 1998, pursuant to chapter 98-270, section 2, Laws of Florida, the Legislature amended section 627.736(5) to expressly provide a thirty-day limitation on medical provider billing. Section 627.736(5)(b), Florida Statutes (1999), requires medical providers to postmark claims no later than thirty days following the date of treatment, or be subject to automatic claim denial by the insurer. The statute also states, however, that a provider who submits a notice of initiation of treatment within twenty-one days of the first examination or treatment of the patient may then have up to sixty days to submit claims to the insurer.[4]

ANALYSIS
Before addressing the constitutional issues, we must assess the terms of the legislation at issue and the Legislature's purpose in adopting those terms. "Legislative intent, as always, is the polestar that guides a court's inquiry under the Florida *1095 No-Fault Law . . . ." Rodriguez, 808 So.2d at 85. "Where the wording of the Law is clear and amenable to a logical and reasonable interpretation, a court is without power to diverge from the intent of the Legislature as expressed in the plain language of the Law." Id. It is apparent by its plain language that the intent of the statutory provision at issue was to impose statutory time limits on the submission of medical bills under the no-fault scheme rather than adherence to the statutory limitations period provided for court actions for breach of contract.
We now turn to the particular constitutional provisions that the petitioners assert are violated by the express thirty-day limitation: equal protection, due process, and access to the courts.[5]

Equal Protection
A constitutional equal protection challenge to a statute that does not involve a fundamental right or suspect classification is evaluated by the rational relationship test. See State Dep't of Ins. v. Keys Title & Abstract Co., 741 So.2d 599, 602 (Fla. 1st DCA 1999) (citing Hodel v. Indiana, 452 U.S. 314, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981)). Under this test, a court must uphold a statute if the classification bears a rational relationship to a legitimate governmental objective. See Keys Title, 741 So.2d at 602. Our analysis in this case is governed by the rational relationship test because section 627.736(5)(b) does not implicate a fundamental right, nor do the petitioners claim to constitute a suspect class or claim that a fundamental right is at stake. See id.
Here, petitioners claim there was no rational basis for the Legislature to distinguish between the various kinds of medical providers in providing for a limited period for submitting claims.
Proper application of the rational relationship test requires this Court to determine: (1) whether the challenged statute serves a legitimate governmental purpose, and (2) whether it was reasonable for the Legislature to believe that the challenged classification would promote that purpose. See id.
Agreeing that the Legislature had a reasonable basis for distinguishing between certain medical providers for the purpose of placing a time limitation on billing, the Fifth District explained:
There is a logical explanation for placing a statutory time limit upon medical providers and not hospital emergency departments and ambulance providers. Medical providers frequently provide ongoing medical treatment involving regular office visits for chiropractic treatment, physical therapy, orthopedic care, and the like. Conversely, services provided by a hospital emergency room or ambulance provider usually occur only once, immediately following the motor vehicle accident. Unlike ongoing medical and chiropractic treatment, determining whether services provided by a hospital emergency room department or an ambulance provider were necessary and related to the motor vehicle accident is usually a straightforward process. We find that the different billing requirements are calculated to reduce unnecessary *1096 medical costs which in turn lowers the costs upon which insurers base PIP premiums and ultimately benefits consumers. Section 627.736(5)(b) is rationally related to this legitimate state purpose, and the classifications within the statute are reasonably designed to achieve that purpose.
State Farm Mut. Auto. Ins. v. Warren, 805 So.2d 1074, 1078 (Fla. 5th DCA 2002). We find no error in the Fifth District's reasoning.
The district court engaged in a thorough analysis of the reasonableness of the statutory classification, having found that not only did the Legislature announce legitimate objectives, but that the classification at issue here served those objectives. The fact that there may be differing views as to the reasonableness of the Legislature's action is simply not sufficient to void the legislation. Because the no-fault statute provides for a statutorily mandated form of insurance, the Legislature would ordinarily be entitled to also enact specific requirements and procedures to carry out the legislative schemes, such as a requirement for the timely submission of medical provider statements. Accordingly, as required by the applicable equal protection analysis, in a light deferential to the Legislature's action, we uphold the district court's determination that section 627.736(5)(b) does not offend equal protection.

Due Process
In Lasky v. State Farm Insurance Co., 296 So.2d 9 (Fla.1974), this Court held that the test used to determine whether a statute violates due process "is whether the statute bears a reasonable relation to a permissible legislative objective and is not discriminatory, arbitrary or oppressive." Id. at 15. The analysis involved in the due process determination closely resembles that of the equal protection analysis. For that reason we find no due process violation.
We agree with the Fifth District that the Legislature's objectives of reducing bulk billing and ensuring that charges covered under no-fault insurance are reasonable, necessary, and related to the motor vehicle accident are permissible legislative objectives, and that those objectives are reasonably related to the thirty-day requirement imposed upon certain medical providers. We also agree that the statute is not discriminatory, arbitrary, or oppressive. First, the provision is designed to relieve a specific problem perceived by the Legislature to be caused by the conduct of some individuals in a given class of medical providers. Additionally, the potentially oppressive aspect of the statute (from the petitioners' viewpoint), an inability to recover payment for services rendered, may be avoided by merely complying with the thirty-day requirement, of which the statute places medical providers on notice. Therefore, we hold that section 627.736(5)(b) does not violate due process.[6]

Access to the Courts
The petitioners also argue that the impact of the thirty-day provision is such that medical providers are denied their day in court to recover payment for services provided, and thus the statute violates the right of access to the courts as guaranteed by Florida's Constitution. On the other hand, State Farm argues that the thirty-day requirement does not unconstitutionally prohibit access to the courts but, rather, is a reasonable condition *1097 precedent to filing a claim under the statutorily mandated insurance coverage.
In Kluger v. White, 281 So.2d 1 (Fla.1973), this Court set forth the following test for analyzing access to the courts claims:
[W]here a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.
Id. at 4. We do not find that Kluger is offended by the thirty-day requirement because the thirty-day requirement does not abolish medical providers' access to the courts. Rather, we agree with the Fifth District that the statute imposes a reasonable condition precedent to filing a claim for certain insurance benefits. The statute places medical providers on notice of the thirty-day requirement, and compliance with the thirty-day requirement preserves access to the courts. Thus, we find the petitioners' argument to be without merit.

CONCLUSION
Accordingly, for the reasons stated above, we conclude that the statute in this case reflects a valid use of legislative authority that does not interfere with the petitioners' equal protection or due process rights, nor does the statute violate the petitioners' rights of access to the courts. Therefore, we uphold the constitutionality of section 627.736(5)(b), Florida Statutes (1999), and approve the decision of the Fifth District Court of Appeal.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD and BELL, JJ., concur.
PARIENTE, C.J., specially concurs with an opinion, in which ANSTEAD, J. concurs.
LEWIS and QUINCE, JJ., dissent with opinions.
CANTERO, J., recused.
PARIENTE, C.J., specially concurring.
I agree with the majority that section 627.736(5)(b), Florida Statutes (1999), is not an unconstitutional violation of due process or equal protection. I also agree that the statute does not unconstitutionally restrict access to courts on its face. However, in my view, there may be circumstances in which this statute results in an unconstitutional denial of access to the courts as applied.
Section 627.736(5)(b) requires most providers of medical services to submit a statement of charges to insurers within thirty days of service or neither the insurers nor injured parties can be held liable for the charges.[7] In Kluger v. White, 281 So.2d 1 (Fla.1973), this Court held that the Legislature is "without power to abolish" a statutory or common law right of access *1098 to the courts "without providing a reasonable alternative to protect the rights of the people . . . to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such a right, and no alternative method of meeting such a public necessity can be shown." Id. at 4 (emphasis supplied). As the majority notes, the thirty-day requirement does not abolish medical providers' access to the courts. The requirement does not even "restrict"[8] medical providers' access to the courts as long as they provide the insurer with their statements of charges within thirty days of treatment, something presumably within the medical providers' control.
Nonetheless, thirty days is a very short period of time. There may be circumstances, as Justice Lewis notes in his dissent, in which a medical provider fails to submit a statement within thirty days through no fault of his or her own. The 1999 version of the statute bars a medical provider from seeking recovery regardless of the reason why the statement was not furnished within thirty days of treatment.[9] Thus, if a medical provider alleged that noncompliance with the statute was due to patient malfeasance or error, the statute would operate to bar the medical provider from exercising the right of access even though the provider had no means to comply. Compare Royle v. Fla. Hosp.-East Orlando, 679 So.2d 1209, 1212 (Fla. 5th DCA 1996) (concluding that where the plaintiff did not lack the capabilities to comply with the presuit requirements for filing a medical malpractice claim, the presuit requirements did not impinge upon the plaintiff's constitutional right to access to the courts), with Sittig v. Tallahassee Mem'l Reg'l Med. Ctr., Inc., 567 So.2d 486, 487 (Fla. 1st DCA 1990) (concluding that statute requiring posting of a bond as a condition to bringing an action was unconstitutional as applied to a plaintiff who was financially unable to post the bond). Under these circumstances, the statute would result in an unconstitutional denial of access to the courts as applied.
For these reasons, I conclude that section 627.736(5)(b) is not unconstitutional on its face but may be unconstitutional as applied to specific facts. In this case, because there is no allegation that Dr. Rotstein's failure to submit his bills within thirty days of treatment was a result of incorrect information provided by the insured, section 627.736(5)(b) was not unconstitutionally applied.
ANSTEAD, J., concurs.
LEWIS, J., dissenting.
I respectfully dissent because, in my view, the very limited thirty-day billing deadline provided in section 627.736(5)(b) of the Florida Statutes unconstitutionally impinges upon medical providers' fundamental rights of property, due process and access to the courts. See Art. I, §§ 2, 9, 21, Fla. Const. The requirement that health care providers submit claims for payment to insurers within thirty days of treatment, or otherwise remain totally unpaid for services legitimately rendered, has unconstitutionally initiated state control over health care providers' property rights, business practices and destroyed access to courts for the recovery of totally legitimate *1099 accounts due and payable.[10] Professionals who fail to satisfy the precise billing practices  as defined by the state and without room for error, human or otherwise  are deprived of any alternative for redress of nonpayment. Forcing health care professionals to simply absorb unpaid costs and expenses in this manner serves no legitimate purpose, and most assuredly fails to further any "compelling government interest" as required for such a severe encroachment on property rights, due process and the right of access to the courts. See Mitchell v. Moore, 786 So.2d 521, 527 (Fla.2001) ("[I]f the interest which is being [affected] is a fundamental interest, . . . then the means or method employed by the statute . . . must meet not only the rational basis test, but also the strict scrutiny test."). In passing on the challenged provision, the majority simply endorses the district court's cursory review of the petitioner's constitutional claim, and, in so doing, sends the unmistakable message that  at least in the Court's eyes  all fundamental rights are not created equal. But see Traylor v. State, 596 So.2d 957, 963 (Fla.1992) ("Under our Declaration of Rights, each basic liberty and each individual citizen has long been held to be on equal footing with every other: `Every particular section of the Declaration of Rights stands on an equal footing with every other section.'") (quoting Boynton v. State, 64 So.2d 536, 552-53 (Fla.1953)).
Under the statutory provision at issue, if one sustains an injury which renders him or her incapable of communicating his or her correct insurance information to the treating physician for thirty days, then the doctor is essentially barred from receiving remuneration for rendering what could potentially be life-saving services. The effect of this statutory scheme, in essence, forces a health-care provider into personal servitude without compensation and without recourse due to no personal fault or defalcation whatsoever. The right to recover for one's personal services may be totally abolished even though a provider may have done everything humanly possible to comply with all aspects of the law. For these reasons, as further articulated herein, I dissent from the majority's decision.
The Declaration of Rights embodied in the Florida Constitution enumerates the personal liberties guaranteed to every Floridian. It protects property rights, rewards for industry, due process and it expressly provides that "[t]he courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." Art. I, § 21, Fla. Const. As with each of the liberties set forth in the Declaration of Rights, property rights, due process and access to the courts are fundamental rights. See N. Fla. Women's Health & Counseling Servs., Inc. v. State, 866 So.2d 612, 635 (Fla.2003).
As this Court has recognized, legislation that intrudes on a fundamental right is presumptively invalid. See id. Any such encroachment must survive strict scrutiny analysis, with the government bearing the burden of demonstrating that the legislation is strictly tailored to serve a compelling governmental interest. See Mitchell, 786 So.2d at 528; see also Kluger v. White, 281 So.2d 1, 4 (Fla.1973). Unlike rational basis review, the strict scrutiny standard "imposes a heavy burden of justification upon the state to show an important societal *1100 need and the use of the least intrusive means to achieve that goal." N. Fla. Women's Health & Counseling Servs., 866 So.2d at 646 (Pariente, J., specially concurring) (quoting Chiles v. State Employees Attorneys Guild, 734 So.2d 1030, 1033 (Fla.1999)).
Despite the clear charge to apply strict scrutiny in analyzing fundamental rights, which would include the access to court claim presented in the instant matter along with others, this Court and the district court below have reviewed all of the petitioner's constitutional claims  including the fundamental rights and access to courts claim  under the rational basis standard. Both courts have failed to acknowledge that without fault, health-care providers can be denied access to judicial remedy. In rejecting the petitioner's position that the billing requirement in the No-Fault Law poses an unconstitutional impediment on access to the courts, the majority simply agrees with the Fifth District that "the statute imposes a reasonable condition precedent to filing a claim for certain insurance benefits." Majority op. at 1097. In my opinion, the reasonableness of the thirty-day time limit is not the pertinent inquiry in determining whether the legislation runs roughshod over aggrieved medical professionals' property rights and right of access to the courts. Instead, the courts must determine whether the limitation imposed is the least intrusive means to serve a compelling state interest. See N. Fla. Women's Health & Counseling Servs., 866 So.2d at 646. In my view, it is not.
As a threshold matter, neither this Court nor the district court made the required determination that the thirty-day time period furthers a "compelling state interest." Indeed, the majority's discussion of the petitioner's right of access to the courts claim is largely devoid of analysis, and one must consult the Court's due process discussion to identify the legislative objectives purportedly furthered by the billing provision of the No-Fault Law. In the context of the due process analysis, the majority endorsed the Fifth District's determination that the objectives of "reducing bulk billing and ensuring that charges covered under no-fault insurance are reasonable, necessary, and related to the motor vehicle accident are permissible legislative objectives, and that those objectives are reasonably related to the thirty-day requirement imposed upon certain medical providers." Majority op. at 1096. Nowhere does the majority assert or analyze that reduction in bulk billing and permitting insurers to adjudge the reasonableness of claims are interests compelling enough to justify an impingement of the fundamental right of court access nor in the manner adopted here. In my view, no such argument could be made. In fact, I do not agree that foreclosing civil remedies from professionals who submit bills more than thirty days after treatment could survive even rational basis scrutiny. In my view, if disputes arise as to compensation for medical services, the fact finders of our system are more than capable of determining which claims for payment are legitimate and which are not.
Setting the analytical failure of the majority opinion aside, however, and assuming for the moment that the above-stated objectives constitute "compelling state interests," there is no basis upon which this Court could conclude that the thirty-day time period is the least intrusive means of achieving such goals. To the contrary, I believe that totally absolving insurers of the duty to pay medical bills submitted more than thirty days after treatment is as overbroad as it is arbitrary. The billing provision of the No-Fault Law does not discriminate between health care providers that actually practice bulk billing and other *1101 suspect business practices and those that do not. It penalizes all health care providers, regardless of whether they or their patients have engaged in illegitimate or wrongful conduct. It also penalizes totally innocent behavior, behavior caused by innocent mistakes and physicians simply having incorrect information. Moreover, there was apparently no consideration given to whether the purported ills justifying a state-mandated billing window would be adequately cured by a forty-five, sixty, or ninety-day deadline.
Our decision in Kluger makes perfectly clear that a legislative enactment impacting the right of access to the courts must provide affected parties reasonable alternatives to litigation. See Kluger, 281 So.2d at 5. Without resort to the courts in an action for nonpayment, a medical professional who fails to submit a bill within thirty days of treatment has only one option  to absorb and write off the time spent and expenses incurred in treating his or her patient. Even in the most competently managed medical practice, billing and accounting mistakes will occur. The statute makes no allowance for that reality. Nor does the statute account for situations in which patients do not provide complete or accurate information regarding their insurance coverage. The statute simply leaves no alternative for medical professionals who provide services in good faith but, for reasons many times unknowable and uncontrollable, are unable to submit a "timely" claim. The statute closes the door to the court on these professionals in a manner which I believe violates controlling precedent. See Moore, 786 So.2d at 525 (determining that the copy requirement of the Prisoner Indigency Statute resulted in an "insurmountable obstacle to a prisoner's right to access the courts").
Equally troubling as the outcome reached in the instant case is the now-distinct pattern this Court has forged in treating fundamental rights differently. Even a casual reader can perceive the strict adherence to constitutional standards and meticulous examination of legislative objectives demonstrated in our recent opinion declaring Florida's Parental Notice of Abortion Act unconstitutional. There, we adhered fervently to the axiom that this Court is "`bound' to construe constitutional rights, which `operate[ ] in favor of the individual, against government,' so as to `achieve the primary goal of individual freedom and autonomy.'" N. Fla. Women's Health & Counseling Servs., 866 So.2d at 647 (Pariente, J., specially concurring). The majority, bolstered by the specially concurring opinions, subjected each of the government interests asserted by the State in justification of the parental notification provision to an uncompromising, exacting, and decidedly non-deferential analysis. See id. at 628-34; see also id. at 645-57 (Pariente, J., specially concurring).
Yet the majority here endorses a district court analysis that I would argue applies the wrong standard entirely and does not even purport to identify the compelling state interests served by the No-Fault Law's thirty-day time limit. The Court has given a cursory review to the petitioner's access to court claim before deeming the thirty-day time period a "reasonable" condition precedent to bringing an action. The relative shallowness of the Court's analysis in this regard effectively deems the right of a minor female to privacy in her decision on a medical issue more important than the right of a medical professional to protect a property interest and proceed with an action for redress of unpaid claims. Ultimately, the failure to apply constitutional standards equally creates *1102 the impression of a judicial preference for certain fundamental rights over others.
In my view, the billing provision in the No-Fault Law cannot pass constitutional muster. The statute improperly renders efficacy in billing practices more important than proper, quality medical care, and will have the impact of diverting health care professionals' attention from matters of patient care to accounting and bookkeeping concerns and possibly impact the availability of medical services. Such an elevation of form over substance is completely inappropriate in matters concerning fundamental rights, which should yield only in the face of compelling government interests which cannot be served by less intrusive means. See Mitchell, 786 So.2d at 528. The majority's decision here brings the state one step further into the environment in which "No-Fault" is synonymous with "no-pay." See Amador v. United Auto. Ins. Co., 748 So.2d 307 (Fla. 3d DCA 1999); Fortune Ins. Co. v. Pacheco, 695 So.2d 394, 395 (Fla. 3d DCA 1997); Martinez v. Fortune Ins. Co., 684 So.2d 201, 203 (Fla. 4th DCA 1996); Crooks v. State Farm Mut. Auto. Ins. Co., 659 So.2d 1266, 1268 (Fla. 3d DCA 1995). The unstated and underlying premise is clear. If physicians and other health care providers face situations in which legitimate medical services are rendered and necessary costs expended but there is no compensation or means of recouping the economic loss, those injured in motor vehicle incidents may find reduced access to medical care. If bulk billing or illegitimate claims are the problem to be addressed, the solution should be so directed and narrowly tailored and constitutional access to courts should not be denied.
The words of Justice Ervin as contained in his dissent in Lasky v. State Farm Insurance Co., 296 So.2d 9 (Fla.1974), with regard to an early analysis of "no-fault" sounded a warning that we have failed to acknowledge, which is evident today as the majority continues to permit the march against fundamental rights to carry on without even a respectable analysis. He reflected:
There have been many complaints in latter years that the courts are being replaced by bureaucratic administration; trial by jury is "old hat," and that special interests run rampant. There is little in these "no-fault" sections to lead one to believe otherwise.
If despite Section 21 of Art. I of the State Constitution the Legislature from time to time under precedents established by this Court can eliminate the redress of particular injuries, or access to the courts for such purpose, there will be no end or limit to the extent legislative power may be exercised to legislate away particular causes of actions and remedies, and particularly so if some segment of the private sector wishes to be immune from suit and can lobby through its immunizing legislation.
There are certain fundamental rights to redress for injury or wrongs which the Constitution precludes elimination by the Legislature. Those tort remedies which are the subject of this litigation are fundamental. There may be a few borderline classes of claims, e.g., heart balm or breach of promise or some usury causes of action which for reasons of clear public policy and obvious compelling state interest may be eliminated by the Legislature, but not those of the traditional tort kind involved in the instant case where an arbitrary threshold limit of $1000 is plucked out of the air by the Legislature.
Id. at 26-27 (Ervin, J., concurring in part and dissenting in part). An arbitrary absolute and unforgiving thirty-day billing requirement has today been "plucked out *1103 of the air" to create immunity and destroy fundamental rights. Justice Ervin was truly a prophet in his prediction that today would arrive and the majority view today simply encourages, advances, and promotes the encroachment upon fundamental access to courts in the future.
Accordingly, I dissent from the action taken by the majority today.
QUINCE, J., dissenting.
I dissent from the majority's determination that section 627.736(5)(b), Florida Statutes (1999), is constitutional; instead I would hold the section unconstitutional as violative of equal protection and access to the courts. Section 627.736(5)(b) provides:
(b) With respect to any treatment or service, other than medical services billed by a hospital for services rendered at a hospital-owned facility, the statement of charges must be furnished to the insurer by the provider and may not include, and the insurer is not required to pay, charges for treatment or services rendered more than 30 days before the postmark date of the statement, except for past due amounts previously billed on a timely basis under this paragraph, and except that, if the provider submits to the insurer a notice of initiation of treatment within 21 days after its first examination or treatment of the claimant, the statement may include charges for treatment or services rendered up to, but not more than, 60 days before the postmark date of the statement. The injured party is not liable for, and the provider shall not bill the injured party for, charges that are unpaid because of the provider's failure to comply with this paragraph. Any agreement requiring the injured person or insured to pay for such charges is unenforceable. For emergency services and care as defined in s. 395.002 rendered in a hospital emergency department or for transport and treatment rendered by an ambulance provider licensed pursuant to part III of chapter 401, the provider is not required to furnish the statement of charges within the time periods established by this paragraph; and the insurer shall not be considered to have been furnished with notice of the amount of covered loss for purposes of paragraph (4)(b) until it receives a statement complying with paragraph (5)(d), or copy thereof, which specifically identifies the place of service to be a hospital emergency department or an ambulance in accordance with billing standards recognized by the Health Care Finance Administration.
Thus, this section of chapter 627 mandates most health care providers, who have rendered services to persons injured in automobile accidents, to send their bills for such services to the insurer within thirty days of the date of the services. If, with few exceptions, a bill is postmarked thirty-one days after the service was rendered, neither the insurance company nor the injured party is required to pay the medical provider's bill. This section, however, is not applicable to hospitals billing for services rendered at a hospital-owned facility, emergency services rendered in a hospital emergency department, and transport and treatment rendered by an ambulance provider.
It is undisputed that the Legislature has the power to regulate businesses, including the insurance industry. However, any regulation must be reasonably related to a legitimate legislative objective. See Lasky v. State Farm Ins. Co., 296 So.2d 9, 15 (Fla.1974). I agree with the petitioner that this legislation discriminates between classes of medical providers without any legitimate legislative objective. The statute in question here must be analyzed in *1104 the context of the purpose of Florida's No-Fault Law. This Court has often been called upon to determine the rights of the parties (the insured, the insurer and the medical providers) under our State's no-fault system. In making these determinations, we have started with the purposes and effects of this no-fault system. In Allstate Insurance Co. v. Kaklamanos, 843 So.2d 885 (Fla.2003), we said:
The Florida Motor Vehicle No-Fault Law, sections 627.730-.7405, Florida Statutes (2001), which was enacted in 1971, was intended to provide a minimum level of insurance benefits without regard to fault. Under this statutory scheme, each driver collects certain statutorily required medical, disability, or death benefits regardless of fault. As this Court has explained, the general policy underlying the no-fault insurance law includes
a lessening of the congestion of the court system, a reduction in concomitant delays in court calendars, a reduction of automobile insurance premiums and an assurance that persons injured in vehicular accidents would receive some economic aid in meeting medical expenses and the like, in order not to drive them into dire financial circumstances with the possibility of swelling the public relief rolls.
Lasky v. State Farm Ins. Co., 296 So.2d 9, 16 (Fla.1974). Kaklamanos, 843 So.2d at 891 (citations omitted); accord Fortune Ins. Co. v. Sims, 464 So.2d 251 (Fla. 4th DCA 1985). Thus, it is clear that one of the purposes of chapter 627 is to make sure that those persons injured in vehicle accidents receive prompt medical attention without having to put themselves into a dire financial position.
Section 627.736(5)(b) does not further this legislative goal. Instead of aiding persons in receiving medical treatment, I see this section as resulting in two other scenarios. A medical provider who has any concerns that his bill for services rendered will not be mailed within the thirty-day time limit will require the patient to pay before services are rendered or will simply not render services to a patient who will be seeking payment under the no-fault system.
Moreover, the requirement that a medical provider send the patient a bill for services within thirty days of rendering the service does not seem to further any legislative objective as pronounced in the no-fault law. While the medical providers' position in this scheme of no-fault does not seem to be articulated in the statutes, it is abundantly clear to me that this scheme cannot work without the cooperation of the medical community. Doctors must be willing to participate by waiting for payment for their services from the insurance companies. Concomitantly, insurance companies must consider the reasonableness of services and be prompt in their payment of legitimate claims.
Although medical providers should also be diligent in sending bills for services to their patients, there does not appear to be any legitimate reason for requiring some medical providers to be more timely than others. For example, if emergency medical treatment is rendered to an accident victim at a hospital emergency room, that hospital is not bound by this thirty-day provision. Yet, if the same treatment is rendered at a walk-in clinic not owned by a hospital, the clinic is bound by the thirty-day provision. If the same treatment is rendered at a facility owned by a hospital, the thirty-day provision would not be applicable. Such a disparity does not serve any legitimate legislative interest and violates the equal protection doctrine.
As this Court said in Caldwell v. Mann, 157 Fla. 633, 26 So.2d 788 (1946),

*1105 "The constitutional right of equal protection of the laws means that everyone is entitled to stand before the law on equal terms with, to enjoy the same rights as belong to, and to bear the same burden as are imposed upon others in a like situation."
"Equal protection of the laws means subjection to equal laws applying alike to all in the same situation."
. . . .
"Classifications by counties or otherwise for the purpose of prescribing regulations or exactions that in effect impose burdens on some of the citizens of the state that in kind or extent are not imposed upon other citizens of the state under practically similar conditions, with no conceivably just basis for the classifications or discriminations, constitute a denial to those injuriously affected of the equal protection of the laws in violation of the Fourteenth Amendment to the federal Constitution."
Caldwell, 26 So.2d at 790-91 (quoting State ex rel. Spence v. Bryan, 87 Fla. 56, 99 So. 327, 329-30 (1924)) (citations omitted); accord DeAyala v. Florida Farm Bureau Cas. Ins. Co., 543 So.2d 204 (Fla.1989).
Section 627.736(5)(b) treats medical providers that are similarly situated differently without any legitimate reason for the different treatment. Medical providers have a constitutional and vested interest in reaping the rewards of their industry. No valid reasoning has been posited for more seriously abridging those rights of some providers while not others. For that reason, I would find the statute unconstitutional as a violation of the equal protection provision of our constitution.[11]
I also agree with Justice Lewis's dissent to the extent that he finds section 627.736(5)(b) unconstitutional as a violation of the right of access to courts. Not only does the statute treat medical providers who are essentially providing the same services differently, but it also takes away some medical providers' ability to recoup in any forum for their labors. These medical providers cannot get the fee from either the insurance company or the patient, thereby rendering any resort to the courts moot.
For these reasons, I disagree with the majority's determination that the statute is constitutional.
NOTES
[1] Section 627.736(5)(b) of Florida's No-Fault Law reads as follows:

With respect to any treatment or service, other than medical services billed by a hospital for services rendered at a hospital-owned facility, the statement of charges must be furnished to the insurer by the provider and may not include, and the insurer is not required to pay, charges for treatment or services rendered more than thirty days before the postmark date of the statement, except for past due amounts previously billed on a timely basis under this paragraph, and except that, if the provider submits to the insurer a notice of initiation of treatment within 21 days after its first examination or treatment of the claimant, the statement may include charges for treatment or services rendered up to, but not more than, 60 days before the postmark date of the statement. The injured party is not liable for, and the provider shall not bill the injured party for, charges that are unpaid because of the provider's failure to comply with this paragraph. Any agreement requiring the injured person or insured to pay for such charges is unenforceable. For emergency services and care as defined in s. 395.002 rendered in a hospital emergency department or for transport and treatment rendered by an ambulance provider licensed pursuant to part III of chapter 401, the provider is not required to furnish the statement of charges within the time periods established by this paragraph; and the insurer shall not be considered to have been furnished with notice of the amount of covered loss for purposes of paragraph (4)(b) until it receives a statement complying with paragraph (5)(d), or copy thereof, which specifically identifies the place of service to be a hospital emergency department or an ambulance in accordance with billing standards recognized by the Health Care Finance Administration. Each notice of insured's rights under s. 627.7401 must include the following statement in type no smaller than 12 points:
BILLING REQUIREMENTS.Florida Statutes provide that with respect to any treatment or services, other than certain hospital and emergency services, the statement of charges furnished to the insurer by the provider may not include, and the insurer and the injured party are not required to pay, charges for treatment or services rendered more than 30 days before the postmark date of the statement, except for past due amounts previously billed on a timely basis, and except that, if the provider submits to the insurer a notice of initiation of treatment within 21 days after its first examination or treatment of the claimant, the statement may include charges for treatment or services rendered up to, but not more than, 60 days before the postmark date of the statement.
[2] The equal protection right set forth in article I, section 2 of the Florida Constitution states:

All natural persons, female and male alike, are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property; except that the ownership, inheritance, disposition and possession of real property by aliens ineligible for citizenship may be regulated or prohibited by law. No person shall be deprived of any right because of race, religion, national origin, or physical disability.
The right to due process set forth in article I, section 9 of the Florida Constitution states:
"No person shall be deprived of life, liberty or property without due process of law, or be twice put in jeopardy for the same offense, or be compelled in any criminal matter to be a witness against oneself."
[3] The right of access to the courts, contained in article I, section 21 of the Florida Constitution, states: "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay."
[4] Although the applicable statute in this case is the statute as it existed in 1999, we note that the statute has undergone amendments since that time. The current version of the applicable statute is codified at section 627.736(5)(c), Florida Statutes (2004).
[5] On separate issues, this Court has confronted the constitutionality of section 627.736(5) in Nationwide Mutual Fire Insurance Co. v. Pinnacle Medical, Inc., 753 So.2d 55 (Fla. 2000). In Pinnacle, this Court held: (1) that the statutory provision allowing prevailing party attorney fees arbitrarily distinguished between medical providers and insureds and therefore violated medical providers' due process rights, and (2) that the provision requiring mandatory arbitration was an unconstitutional violation of the petitioner's right of access to the courts. Id. at 59.
[6] We are not presented here with the rejection of a medical provider's claim against a patient-insured.
[7] This provision was added during the 1998 legislative session. See ch. 98-270, § 2, Laws of Fla. At that time, the statute exempted medical services billed by a hospital for services rendered at a hospital-owned facility from this requirement. In 2001, the Legislature also expressly exempted "other providers of emergency services" from this requirement. See ch.2001-271, § 6, Laws of Fla.
[8] See Smith v. Dep't of Ins., 507 So.2d 1080, 1088 (Fla.1987) (concluding that the Legislature's attempt to restrict the right to redress at the top of the damages spectrum is unconstitutional unless one of the Kluger exceptions is met).
[9] In 2001, the Legislature added a provision that allows a provider an extra thirty-five days to submit a bill if the provider was given incorrect information by the insured. See ch.2001-271, § 6, Laws of Fla. (currently codified at § 627.736(5)(c)(2), Fla. Stat. (2004)).
[10] I recognize that the statute provides health care professionals who notify insurance companies within twenty-one days of the commencement of treatment sixty days to submit bills for payment. See § 627.736(5)(b), Fla. Stat. (1999). This provision does not, in my view, alleviate the constitutional infirmity of the billing requirement in Florida's No-Fault Law.
[11] Article I, section 2 of the Florida Constitution provides:

All natural persons, female and male alike, are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property; except that the ownership, inheritance, disposition and possession of real property by aliens ineligible for citizenship may be regulated or prohibited by law. No person shall be deprived of any right because of race, religion, national origin, or physical disability.