955 So.2d 11 (2006)
CORAL IMAGING SERVICES, a/o/a Virgilio Reyes, Petitioner,
v.
GEICO INDEMNITY INSURANCE COMPANY, Respondent.
No. 3D06-597.
District Court of Appeal of Florida, Third District.
October 4, 2006.
*12 Stephens Lynn Klein La Cava Hoffman & Puya, P.A., and Marlene S. Reiss, Miami, for petitioner.
Shutts & Bowen, LLP, and Frank A. Zacherl and Suzanne Youmans Labrit, Miami, for respondent.
Before, GREEN, SUAREZ, and CORTIÑAS JJ.
GREEN, J.
Coral Imaging Services petitions for a writ of certiorari to quash a decision of the Circuit Court Appellate Division interpreting section 627.736(5)(b), Florida Statutes (1999). As the decision departs from the essential requirements of law, Ferrara v. Cmty. Developers, Ltd., 917 So.2d 907 (Fla. 3d DCA 2006); Haines City Cmty. Dev. v. Heggs, 658 So.2d 523 (Fla.1995), we grant certiorari and quash the decision below. We remand with directions to reinstate the summary judgment entered by the trial court.
Judge Emas's eloquently written dissent to the Appellate Division's majority opinion clearly and succinctly sets out the facts and reasoning in this case. We adopt that dissenting opinion in its entirety, as reproduced below:
The material facts of this case are not in dispute: Geico's insured was involved in an automobile accident. He sought treatment for his injuries under his PIP policy from several providers, including Coral Imaging. Coral Imaging provided medical services to the insured and submitted a timely bill for $2300.
However, payment was denied on these timely-submitted claims[1] because Geico had already exhausted the $10,000 limits under its insured's PIP policy. The limits were exhausted, in part, because Geico paid two untimely claims submitted by Professional Reading, thereby diminishing and eventually exhausting the available PIP benefits under the insured's policy.
Coral Imaging sued Geico for payment of the outstanding portion of the timely-submitted bill, claiming that Geico's payment of untimely claims was improper.
The question squarely presented is whether the insurer has the right under the statute to pay for the services rendered by a provider when the provider has concededly failed to submit the bills within the timeframe mandated by § 627.736(5)(b) and has violated the express terms of the statute by including untimely claims in the billing statement submitted to the insurer. The majority holds that the statute does not prohibit the insurer from paying these late *13 claims, and that the payment of such late claims counts against the $10,000 limits of the insured's PIP benefits, thereby preventing another provider from receiving payments for services provided and billed for on a timely basis. I believe that such a statutory interpretation is not logical, reasonable, or intended by the Legislature.
This case involves the interpretation of Section 627.736(5)(b), Florida Statutes (1999), which establishes the requirements for payment of Personal Injury Protection (PIP) benefits under Florida's No-Fault Law. The relevant portion of that statute provides:
(b) With respect to any treatment or service, other than medical services billed by a hospital for services rendered at a hospital-owned facility, the statement of charges must be furnished to the insurer by the provider and may not include, and the insurer is not required to pay, charges for treatment or services rendered more than 30 days before the postmark date of the statement, except for past due amounts previously billed on a timely basis under this paragraph, and except that, if the provider submits to the insurer a notice of initiation of treatment within 21 days after its first examination or treatment of the claimant, the statement may include charges for treatment of services rendered up to, but not more than, 60 days before the postmark date of the statement. The injured party is not liable for, and the provider shall not bill the injured party for, charges that are unpaid because of the provider's failure to comply with this paragraph. Any agreement requiring the injured person or insured to pay for such charges is unenforceable. (Emphasis supplied).
In addressing the proper interpretation of a statutory provision, courts must defer to the legislative intent as expressed by the statute in question. "Legislative intent, as always, is the polestar that guides a court's inquiry under the Florida No-Fault Law. . . ." United Auto. Ins. Co. v. Rodriguez, 808 So.2d 82, at 85 (Fla.2001). A fundamental principle of statutory construction is that "[w]here the wording of the Law is clear and amenable to a logical and reasonable interpretation, a court is without power to diverge from the intent of the Legislature as expressed in the plain language of the Law." Rodriguez, at 85.
The initial question which must be answered, then, is whether the wording of the statute is "clear and amenable to a logical and reasonable interpretation." I conclude that the majority's interpretation of the statute does not meet this threshold test.
Under the relevant provisions of Fla. Stat. § 627.736(5)(b):
1) A provider of medical services must submit to the insurer a statement of charges for treatment or services rendered to the insured;
2) The provider's statement of charges "may not include . . . charges for treatment or services rendered more than 30 days" before the date the statement of charges is sent to the insurer.
3) The insurer is not required to pay charges for treatment or services which were rendered more than 30 days before the statement of charges is sent to the insurer.
4) The provider may not bill the injured party for the untimely, unpaid charges.
5) The injured party is not liable to the provider for the untimely, unpaid charges.

*14 The first and most obvious reason why the majority's statutory interpretation is not logical or reasonable is that it requires the provider to violate one provision of the statute in order to receive the benefit of another provision of the same subsection.
Under the statute, the provider is prohibited from including in its statement of charges any services which were rendered more than 30 days ago ("the statement of charges . . . may not include . . . charges for treatment or services rendered more than 30 days before the postmark date of the statement.").[2] Therefore, the provider is not even permitted to submit a bill for untimely services. Only by violating this portion of the statute can we ever reach the question of whether an insurer has the authority to pay an untimely bill.[3] In order to be in a position to receive payment on its untimely claim, Professional Reading had to violate the express provisions of Section 627.736(5)(b) by submitting a statement of charges which included untimely-billed services. It cannot logically or reasonably be argued that the Legislature intended to require the provider to violate one portion of a statute in order to receive a benefit under another portion of the same statute.
Furthermore, the entire intent of the 30-day time limitation would be eviscerated under the interpretation urged by Appellant and adopted by the majority. The unreasonableness of this position can be seen by taking the majority's interpretation to its logical conclusion, resulting in this very possible scenario:
1) Assume that Coral Imaging submits a timely bill for services totaling $10,000 (representing the limits of the PIP benefits).
2) Assume further that Professional Reading submits an untimely bill for services totaling $10,000 (also representing the limits of the PIP benefits).
3) Geico, the insured, receives Coral Imaging and Professional Reading's bills on the same day, and notes that Coral Imaging's bill was timely while Professional Reading's bill was untimely.
4) Under the majority's interpretation, Geico has the right to pay either Coral Imaging's timely bill or Professional Reading's untimely bill.
5) Geico chooses to pay the entire $10,000 to Professional Reading for its untimely bills, thereby exhausting the limits of the PIP policy.
6) As a result of paying the untimely bill and exhausting the limits of the PIP policy, Geico denies all payment on Coral *15 Imaging's timely-submitted bill of $10,000.
7) Coral Imaging, having been denied payment on its timely-submitted bill, now seeks payment from the insured for the $10,000 in services provided.
These results expose an interpretation of the statute that is neither reasonable nor logical: the statute provides that "the injured party is not liable for, and the provider shall not bill the injured party for, charges that are unpaid because of the provider's failure to comply with this paragraph." The 30-day time limitation requires a provider to submit its bill on a timely basis and, if the provider does not do so and the insurer does not pay, the provider cannot bill the insured for the services. This provision is intended to put teeth into the 30-day time limitation by placing the provider on notice that it will have no recourse against the insured if it fails to meet the time requirements under the statute.
However, by paying Professional Reading's untimely bills (and in doing so, exhausting the PIP benefits) the insurer has exposed its own insured to an additional $10,000 obligation from Coral Imaging; upon exhausting the PIP benefits by paying Professional Reading, and denying payment to Coral Imaging on its timely bill, Coral Imaging is now permitted to seek payment from the insured because it complied with the statutory 30-day time requirement. If, on the other hand, Geico chose (or was duty-bound by statute) to deny Professional Reading's untimely bill (therefore allowing Geico to pay Coral Imaging's timely bill of $10,000), Professional Reading would have no recourse against the insured because the statute provides that "[t]he injured party is not liable for, and the provider shall not bill the injured party for, charges that are unpaid because of the provider's failure to comply with this paragraph." [§ 627.736(5)(b), Fla. Stat. (1999).]
Therefore, if the majority's reading of the statute is accurate, the insurer may unilaterally decide whether its insured will be exposed to liability for Coral Imaging's timely-submitted bill by exercising its authority under the statute to pay an untimely-submitted bill. This interpretation allows the insurer to avoid or defeat altogether the purpose of the time limitation by paying an untimely provider and subjecting its own insured to liability the statute was created to prevent. Given this application, I do not believe that the majority's interpretation of Section 627.736(5)(b) can be characterized as logical or reasonable.
In order to be construed logically and reasonably, and to effectuate the legislative intent, the statute must be read as:
1. Prohibiting the provider from submitting for payment the untimely charges and (if said untimely charges are improperly submitted) requiring the insurer to deny payment as violative of the express provisions of Fla. Stat. § 627.736(5)(b); or
2. Prohibiting, or treating as gratuitous, any payment for charges submitted in violation of the 30-day time requirements.
Support for this conclusion is found in the Supreme Court's recent opinion in Warren v. State Farm Mutual Auto. Ins. Co., 899 So.2d 1090 (Fla.2005). In upholding the time requirements as constitutional, the Court stated:
[I]ncluded in the no-fault statute is a provision for a procedure through which medical providers may file claims and receive payment for services provided. See § 627.736(5)(a), Fla. Stat. (1999). Section *16 627.736(5)(b) sets forth the procedures with which treating medical providers must comply in order to receive payment from the no-fault insurer for services rendered.
Prior to 1998, the only limitation placed on the timely submission of medical provider claims to insurance companies was the five-year statute of limitations for a breach of contract claim. As a result, medical providers could potentially allow charges to mount, and submit charges for services rendered over a long period of time, and distant from the time of the original accident. In 1998 . . . the Legislature amended section 627.736(5)(b) to expressly provide a thirty-day limitation on medical provider billing. Section 627.736(5)(b), Florida Statutes (1999), requires medical providers to postmark claims no later than thirty days following the date of treatment, or be subject to automatic claim denial by the insurer.

* * *
It is apparent by its plain language that the intent of the statutory provision at issue was to impose statutory time limits on the submission of medical bills under the no-fault scheme rather than adherence to the statutory limitations period provided for court actions for breach of contract. Warren, 899 So.2d at 1094, 1095 (emphasis supplied).
Although the Supreme Court in Warren was not faced with the question of an insurer's authority to pay a bill that violates the time and billing requirements of Section 627.736(5)(b), it is instructive that the Court used the above language in describing the mandatory nature of the time requirements before a provider can receive payment. An interpretation of a statute by the highest court of a state is generally regarded as an integral part of the statute. Seddon v. Harpster, 396 [369] So.2d 662 (Fla. 2d DCA 1979).
I believe that, in order to interpret the statute in a logical and reasonable manner, and to effectuate its legislative purpose, the provision must be read as prohibiting Geico from paying the untimely and improperly-billed charges submitted by Professional Reading, as violative of the provisions of § 627.736(5)(b). Alternatively, the payment by Geico must be characterized as "gratuitous," and should not be considered as having been made against the limits of the PIP policy. While Geico remains free to pay providers for charges that are untimely or otherwise submitted in express contravention of the statute, such payments should not be considered a "payment" under the PIP policy. By interpreting the statute in this manner, the remaining provisions of Section 627.736 will be effectuated and the clear legislative intent fulfilled.
(Emphasis and footnotes in original).
As this analysis demonstrates, there has been a violation of a "clearly established principles of law resulting in a miscarriage of justice." Combs v. State, 436 So.2d 93, 95-96 (Fla.1983), cited with approval in Ivey v. Allstate Ins. Co., 774 So.2d 679, 682 (Fla.2000). In this case, the Circuit Court Appellate Division applied the incorrect law in interpreting the statute as elucidated in the dissent, and deviated from the form of law and the rules prescribed for rendering it.
Certiorari granted; order quashed; remanded with directions.
NOTES
[1] Actually, $365.36 remained available under the policy limits of $10,000, so Geico paid that amount to Coral Imaging. Geico denied payment of the remaining amount of the bill ($1934.64).
[2] In the context of this statutory provision "may not" is the equivalent of "shall not," and cannot reasonably be interpreted as permitting the provider to include untimely charges in its bill. Thousands of analogous examples can be found throughout Florida's constitutional and statutory provisions. See, e.g., Art. III, § 8(a), Fla. Const.; Fla. Stat. § 11.062(2)(a); § 11.066(4); § 11.70(3)(d); § 14.29(3)(b), (12); § 20.04(7)(a); § 20.19(6)(f); § 20.23(2)(a)3; § 27.34(2); § 27.711(3); § 28.241(3),(4); § 29.004(10)(d); § 39.012; § 39.013(2); § 44.06(2); § 63.0423(5) and (6); § 90.604. Cf. e.g., Fla. Stat. § 627.4143(3)(b) (provision in same chapter utilizing permissive language "may or may not"); 11.70(5)(d)(same); § 121.091(7)(b)(same); § 154.09(4)(same); § 180.26(same); § 260.012(3)(same); § 475.611(1)(a)3 (same). [sic].
[3] Regardless of the timeliness of the claim, it is difficult to conceive of another way in which an insurer would be aware that a provider has rendered necessary and reasonable medical services to the insured arising out an automobile accident unless the provider first submits a bill to the insurer.