DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RECOVERY RACING, LLC** d/b/a **MASERATI OF FORT LAUDERDALE,**
Appellant,

v.

**STATE OF FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND
MOTOR VEHICLES, MASERATI NORTH AMERICA, INC.,** and **RICK
CASE WESTON, LLC** d/b/a **RICK CASE MASERATI,**
Appellees.

No. 4D15-0650

[June 1, 2016]

Appeal from the State of Florida, Division of Administrative Hearings; L.T. Case Nos. DMV 14-1016 and DOAH 14-2700.

Raoul G. Cantero, David P. Draigh, and Ryan A. Ulloa of White & Case LLP, Miami, for appellant.

Susan V. Warner and Andy Bertron of Nelson Mullins Riley & Scarborough, LLP, Jacksonville and Tallahassee, and Robert D. Cultice of Wilmer Cutler Pickering Hale and Dorr LLP, Boston, Massachusetts, for appellee, Maserati North America, Inc.

Robert E. Sickles and John P. Gaset of Broad and Cassel, Tampa, for appellee Rick Case Weston, LLC d/b/a Rick Case Maserati.

A. Edward Quinton, III and Kenneth L. Paretti of Quinton & Paretti, P.A., Miami, for Amicus Curiae South Florida Automobile Dealers Association in support of Recovery Racing, LLC d/b/a Maserati of Fort Lauderdale.

DAMOORGIAN, J.

Recovery Racing, LLC appeals an administrative order in which the Department of Highway Safety and Motor Vehicles (the "Department") determined that Recovery Racing lacked standing to protest Rick Case Weston, LLC, d/b/a Rick Case Maserati's (the "Proposed Dealership") proposal to establish a new Maserati dealership. We affirm.

Legislative Framework

Before delving into the specifics of this case, it is necessary to understand the legislative framework governing the licensing of automotive dealerships in the State of Florida. The relevant statutes are set forth in Chapter 320 of the Florida Statutes, the provisions of which the Department is charged with administering and enforcing. § 320.011, Fla. Stat. (2014).

In section 320.605, the Florida Legislature manifested an intent "to protect the public health, safety, and welfare of the citizens of the state by regulating the licensing of motor vehicle dealers and manufacturers, maintaining competition, providing consumer protection and fair trade and providing minorities with opportunities for full participation as motor vehicle dealers." § 320.605, Fla. Stat. (2014). To that end, it enacted section 320.642, which outlines the procedures for obtaining a license to relocate an existing dealership or establish a new dealership in an existing market. § 320.642, Fla. Stat. (2014). Under section 320.642, the potential licensee must notify the Department of its intent to establish an additional dealership and the Department must then, in turn, publish a notice in the *Florida Administrative Register*. § 320.642(1), Fla. Stat. (2014). At that point, an existing dealership may protest the proposed dealership so long as the existing dealership has standing. § 320.642(2)-(3).

In counties with a population exceeding 300,000 people (such as Broward County), "[a]n existing franchised motor vehicle dealer or dealers shall have standing to protest a proposed additional or relocated motor vehicle dealer when the existing motor vehicle dealer or dealers have a franchise agreement for the same line-make vehicle to be sold or serviced by the proposed additional or relocated motor vehicle dealer" and is either: 1) located within 12.5 miles of the location of the proposed dealership, or 2) "can establish that during any 12-month period of the 36-month period preceding the filing of the licensee's application for the proposed dealership, such dealer or its predecessor made 25 percent of its retail sales of new motor vehicles to persons whose registered household addresses were located within a radius of 12.5 miles of the location of the proposed additional or relocated motor vehicle dealer." § 320.642(3)(b)1.-2., Fla. Stat. (2014). Relevant to this appeal is the second method of establishing standing, which will be referred to as the "25% Test."

Factual Background

Recovery Racing is a franchised Maserati dealer which sells cars from its location in Broward County, Florida. In 2014, the Department

published a notice that the Proposed Dealership intended to establish a new Maserati dealership about seventeen miles away from Recovery Racing's dealership. Recovery Racing filed a "Petition or Complaint Protesting the Establishment of Additional Dealership" with the Department of Administrative Hearings ("DOAH"), alleging that it had standing under the 25% Test and that Maserati was "receiving adequate representation for the Maserati line-make in the community or territory of the proposed additional dealership site by existing franchised same-line dealers who register sales and leases in the community or territory."

Thereafter, the Proposed Dealership and Maserati North America, Inc. ("Maserati") filed a joint motion requesting a hearing on the limited issue of Recovery Racing's standing. The Administrative Law Judge ("ALJ") granted the motion and also ruled that Recovery Racing bore the burden of establishing its standing.

At the standing hearing, Recovery Racing presented the testimony of an economist, Edward Stockton, who opined that Recovery Racing met the criteria for standing under the 25% Test. In arriving at this determination, Mr. Stockton began with all of Recovery Racing's sales for the applicable 36-month period excluding wholesale sales, used vehicle sales, and sales of aftermarket parts not associated with new vehicles. He then removed any sales where the "beneficiary" of the transaction was a business (e.g., a company car). Based on the foregoing, Mr. Stockton opined that the remainder was the total amount of Recovery Racing's "retail sales of new motor vehicles."

To determine which of Recovery Racing's "retail sales of new motor vehicles" were made to persons with "registered household addresses" within 12.5 miles of the Proposed Dealership, Mr. Stockton looked at Recovery Racing's sales files to find the primary home address of the "ultimate beneficiary" of the sale. He looked to the sales files as opposed to vehicle registration information because many of Recovery Racing's clients have multiple homes or use purchasing agents and, therefore, their primary home address may be different than where the car is registered with the Department.

After extracting the sales which met his definition of "retail sales of new motor vehicles to registered household addresses" within 12.5 miles of the proposed dealership, Mr. Stockton grouped the sales into "standing periods." Mr. Stockton described the "standing periods" as any 12-month period—beginning on any day of a particular month and ending on the same day of the month 12-months later—within the 36-month period preceding the Proposed Dealership's license application.

Based on the afore-outlined methodology, Mr. Stockton concluded that Recovery Racing had standing under the 25% Test during five "standing periods." None of the "standing periods" during which Mr. Stockton determined Recovery Racing had standing began on the first of a month.

The Proposed Dealership and Maserati argued that the manner in which Mr. Stockton interpreted the 25% Test called for manipulated data and a skewed reading of the governing statute. They maintained that under a plain language application of the 25% Test, Recovery Racing could not establish that it had standing. In support of this position, the Proposed Dealership and Maserati presented testimony from their own expert, Sharif Farhat. Mr. Farhat opined that the highest percentage of Recovery Racing's "retail sales to registered household addresses" within 12.5 miles of the Proposed Dealership during any possible 12-month period within the 36-months preceding the Proposed Dealership's application was 14.2%. In arriving at this conclusion, Mr. Farhat utilized the following definitions when compiling the data to plug into the 25% Test:

- "retail sales" meant sales to natural persons and to businesses that buy fewer than ten vehicles in a year.

- "registered household addresses" meant the address of where the vehicle sold by Recovery Racing was registered with the Department.

- "12-month period" meant a period beginning on the first of the month and ending on the last day of the calendar month.

The ALJ entered a recommended order concluding that Recovery Racing did not have standing to protest the Proposed Dealership because it could not satisfy the 25% Test. In so doing, the ALJ rejected Mr. Stockton's definition of the term "registered household addresses" as the primary home address of the ultimate beneficiary of the sale and instead found that "registered household addresses" as used in the statute meant the address where the purchased vehicle was registered with the Department. The ALJ also rejected Mr. Stockton's interpretation of the term "retail sales" as "suspect in that it requires investigation into whether a business is a 'beneficiary' or an 'instrument' – again, information that is highly subjective and easily manipulated." Finally, the ALJ rejected Mr. Stockton's "rolling" definition of "12-month period," reasoning that Rule 15C-7.004(9) of the *Florida Administrative Code* provides that the 36-month lookback period is calculated based on the last day of the calendar

4

month prior to the date of publication of the notice of intent to open a new dealership.  Thus, the ALJ reasoned the 12-month period must also be based on whole calendar months.  The Department issued a final order adopting the recommended order in its entirety.  This appeal follows.

Analysis

We begin our analysis by noting the well-established principle of law that "administrative agencies are afforded wide discretion in interpreting statutes which they administer.  An agency's statutory construction is entitled to great weight and is not to be overturned on appeal, unless clearly erroneous."  *Braman Cadillac, Inc. v. Dep't of Highway Safety & Motor Vehicles*, 584 So. 2d 1047, 1050 (Fla. 1st DCA 1991).

Recovery Racing takes issue with the Department's interpretation of the 25% Test as set forth in section 320.642, arguing that it erroneously placed the burden of proving standing on Recovery Racing and construed the data points contained in the 25% Test contrary to the statute's plain language.  We disagree.

With respect to standing, Recovery Racing analogizes this case to a civil proceeding where a defendant who seeks to avoid a judgment by raising the plaintiff's standing as an affirmative defense bears the burden of proving lack of standing by a preponderance of the evidence.  *Cong. Park Office Condos II, LLC v. First-Citizens Bank & Trust Co.*, 105 So. 3d 602, 607 (Fla. 4th DCA 2013) (lack of standing is an affirmative defense which must be raised by the defendant).  As such, it maintains that the Proposed Dealership and Maserati bore the burden of proving that Recovery Racing lacked standing.  We reject Recovery Racing's argument because section 320.642(3)(b)2. provides that an existing dealer has standing to protest a proposed dealership under the 25% Test if it "can establish that" it meets the criteria.  § 320.642(3)(b)2., Fla. Stat. (2014).  This plain language places the burden squarely on the existing dealer to show its standing.[1] *See id.; see also Braman Cadillac, Inc.*, 584 So. 2d at 1050 (affirming because the existing dealer "cannot meet [the standing] requirements" of section 320.642(3)(b)").

---

[1] Indeed, in the administrative context, the burden is typically on the petitioner/intervenor to establish it has standing at the outset.  *See AmeriSteel Corp. v. Clark*, 691 So. 2d 473, 477 (Fla. 1997); *Accardi v. Dep't of Envtl. Prot.*, 824 So. 2d 992, 996 (Fla. 4th DCA 2002); *see also Palm Beach Cty. Envtl. Coal. v. Fla. Dep't of Envtl. Prot.*, 14 So. 3d 1076, 1077-78 (Fla. 4th DCA 2009) (chapter 120 requires a petitioner to establish that it has standing in order to initiate an administrative proceeding).

Turning to the Department's interpretation of the data points used to calculate standing under the 25% Test, we first address its interpretation of the term "registered household addresses." The Department interpreted the term to mean the addresses where the purchased vehicles are registered with the Department. Recovery Racing argues that this was an erroneous interpretation. We disagree, as any other interpretation would ignore the implications of the word "registered" as used in the context of Chapter 320.

When interpreting statutes, we are required to give effect "'to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage.'" *Am. Home Assurance Co. v. Plaza Materials Corp.*, 908 So. 2d 360, 366 (Fla. 2005) (quoting *Hechtman v. Nations Title Ins.*, 840 So. 2d 993, 996 (Fla. 2003)). "Further, 'a basic rule of statutory construction provides that the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless.'" *Id.* (quoting *State v. Goode*, 830 So. 2d 817, 824 (Fla. 2002)). "[R]elated statutory provisions must be read together to achieve a consistent whole, and . . . '[w]here possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another.'" *Woodham v. Blue Cross & Blue Shield of Fla., Inc.*, 829 So. 2d 891, 898 (Fla. 2002) (citation omitted) (quoting *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 455 (Fla. 1992)).

Chapter 320, entitled "Motor Vehicle Licenses," governs not only the relationships between automotive manufacturers, distributors, and dealers, but also governs the registration of motor vehicles within the state. Indeed, Chapter 320 contains multiple sections discussing vehicle registration procedures and requirements. *See, e.g.*, §§ 320.02, 320.03, 320.031, 320.04, 320.05, 320.06, 320.0605, 320.071, 320.0715, Fla. Stat. (2014). One such section requires that when registering a vehicle, the applicant must provide "the street address of the owner's permanent residence or the address of his or her permanent place of business." 320.02(2)(a). In light of these considerations, the term "registered home addresses" clearly refers to the addresses where the vehicles are registered with the Department. Interpreting the phrase any other way would ignore the implications of section 320.642's location within Chapter 320. *See Heart of Adoptions, Inc. v. J.A.*, 963 So. 2d 189, 200 (Fla. 2007) (interpreting a term contained in a statute by reading the section "*in pari materia* with related provisions" of the chapter in which it was located). Accordingly, the Department did not err in its interpretation of the term "registered household addresses" as used in section 320.642(3)(b)2.

Our holding concerning the definition of the term "registered household addresses" is dispositive to this case. As Mr. Farhat testified and the ALJ noted, Recovery Racing cannot establish that it has standing under the 25% Test utilizing Mr. Stockton's proposed definitions of "retail sales" and "12-month period" so long as "registered household addresses" means the addresses where the vehicles sold by Recovery Racing are registered with the Department. Therefore, we affirm without addressing the merits of the Department's interpretation of the terms "retail sales" and "12-month period."

*Affirmed.*

LEVINE, J., and HANZMAN, MICHAEL A., Associate Judge, concur.

\*      \*      \*

***Not final until disposition of timely filed motion for rehearing.***